### In re TERRA DISTRIBUTING, INC., Debtor.

### Bankruptcy No. 90–00698–7.

United States Bankruptcy Court, D. Idaho.

Nov. 9, 1992.

Rodney T. Buttars, Boise, ID, for debtor.

Lance D. Churchill, Churchill Law Office, Boise, ID, for creditor Ron Gabriel.

## MEMORANDUM OF DECISION

ALFRED C. HAGAN, Chief Judge.

The trustee in this chapter 7 case objects to a priority claim filed by Ron Gabriel ("Gabriel").

Prior to its filing, Terra Distributing, Inc., ("debtor") advertised an offer of two free tickets to one of several possible destinations with the purchase of a cellular telephone or fax machine of a value of $699.00 or more. Gabriel purchased a cellular telephone for $699 plus tax, paying for the purchase with a check dated September 20, 1989, in the amount of $733.95. The debtor subsequently offered the telephone to Gabriel, at which time the debtor's agent revealed the plane tickets were not free, but required an additional payment of several hundred dollars to purchase hotel accommodations. Gabriel refused delivery of the telephone, and directed his attorney to send a demand letter for the telephone and the two tickets without any further charge. Debtor subsequently filed its chapter 7 petition in this Court.

The trustee does not dispute the existence or amount of the debt. Rather, the trustee contends the debt is a general unsecured claim not entitled to priority treatment. Gabriel argues all of the elements of section 507(a)(6) have been met.

## LEGAL STANDARDS

There is a preference in bankruptcy law that the limited estate of a debtor will be equally distributed among all credi-

tors; consequently, statutory priorities are construed narrowly. *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.,* 789 F.2d 98, 100 (2d Cir.1986) (citing cases) (administrative expense priority under section 507). The burden to demonstrate the elements required for priority status lies upon the claimant. *Bonner v. Allman (In re Heritage Village Church and Missionary Fellowship, Inc.),* 137 B.R. 888, 892 (Bankr.D.S.C.1991).

## DISCUSSION

Section 507(a)(6) allows a priority claim for certain consumer creditors.[1] The trustee presents three arguments in support of his contention the claim is not entitled to priority under section 507: (1) the cellular telephone was "delivered" to Gabriel; (2) the transaction here is not a "deposit," but rather a cash-and-carry transaction outside the scope of section 507(a)(6); and (3) the offer made in the advertisement terminated by its own terms five days prior to Gabriel's purchase.

■ Gabriel is however, entitled to his priority claim. As a contract for the sale of goods, this transaction falls under Article 2 of the Uniform Commercial Code. Idaho Code §§ 28–2–102 and 28–2–105. Where the tender does not conform to the contract, the buyer has the right to reject delivery. Idaho Code 28–2–601.[2]

■ Gabriel paid the debtor in exchange for the consideration promised in the advertisement; namely, the cellular telephone plus two free plane tickets. The debtor apparently accepted this payment without qualifying the terms placed in the advertisement. Debtor then offered to Gabriel a nonconforming delivery of a cellular telephone together with the option to obtain two tickets contingent upon further payment. While no case law has been found considering what constitutes a delivery under section 507(a)(6), delivery must be such a tender that a buyer may not refuse acceptance without breaching the contract under applicable law. Because Gabriel was entitled to reject the delivery of the telephone as nonconforming, there has been no "delivery" for the purposes of section 507(a)(6).

■ The trustee's argument that the transaction is not a "deposit" is also incorrect. "Deposit" is not a defined term under the Bankruptcy Code. One court has interpreted the meaning of the term deposit in connection with section 507(a)(6). *Heritage Village, supra,* 137 B.R. at 892. That court reasoned "In its usage in § 507(a)(6), the appropriate definition of deposit is that of 'putting down as a pledge' or 'partial payment.'" *Heritage Village, supra,* 137 B.R. at 896. Based on a distinction between partial payment and full payment, the court apparently held the former was a "deposit" but the latter was not.

It is difficult, however, to accept the holding of *Heritage Village,* in concluding a partial payment pending delivery of goods or services is a "deposit," but full payment pending delivery is not. Moreover, the legislative history of § 507(a)(6) indicates full payment for services is sufficient to meet the priority requirement.

A consumer that pays money on a layaway plan or as a deposit on merchandise, *or that buys a service contract or*

---

1. Section 507 provides in its pertinent part:

    (a) The following expenses and claims have priority in the following order:

    \*    \*    \*    \*    \*    \*

    (6) Sixth, allowed unsecured claims of individuals, to the extent of $900 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property, or the purchase of services, for the personal, family, or household use of such individuals, that were not delivered or provided.

    11 U.S.C. § 507(a)(6).

2. Section 28–2–601 is entitled "Buyer's rights on improper delivery," and states:

    Subject to the provisions of this chapter on breach in instalment contracts (section 28–2–612) and unless otherwise agreed under the sections on contractual limitations of remedy (sections 28–2–718 and 28–2–719), if the goods or the tender of delivery fail in any respect to conform to the contract, the buyer may

    (a) reject the whole; or

    (b) accept the whole; or

    (c) accept any commercial unit or units and reject the rest.

    I.C. § 28–2–601.

*a contract for lessons or a gym membership,* is a general unsecured creditor of the business to which he has given his money....

In order to remedy this problem and to reorganize [sic] the position of consumer creditors as different from that of business creditors, the bill provides a priority for consumer creditors of a bankrupt business.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 188 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6148–49 (emphasis added). There is no reason to assume that "deposit" includes full payment for services, but not full payment for goods.

Lastly, the trustee argues the advertisement terminated on September 15, 1989, based upon a date contained within the advertisement. Because the check is dated September 20, 1989, the trustee contends the advertised offer was no longer effective. A fair reading of the terms of the advertisement, however, shows the termination date involved a special offer regarding the prices of cellular telephones.[3] Moreover, even had the advertisement terminated or been ineffective as an offer, the debtor apparently accepted Gabriel's offer to purchase a cellular telephone on the terms of the advertisement.

The trustee's objection to the priority status of claim no. 12, filed by Ron Gabriel, is denied and the claim will be allowed as a priority claim. A separate order will be entered.

---

**3.** The advertisement states in its pertinent part:

"Cellular Phones: ... Prices start at $499.95* ". The asterisk referenced the following note: " *(Special Ends Sept. 15, 1989)".