**In re TART'S T.V., FURNITURE AND APPLIANCE COMPANY, INC., Debtor.**

**Bankruptcy No. 91–00024–8–ATS.**

United States Bankruptcy Court, E.D. North Carolina.

March 23, 1994.

Mark C. Kirby, Raleigh, NC, for Transamerica.

Carol A. Morrison, Chapter 7 Trustee, Fayetteville, NC.

## MEMORANDUM OPINION AND ORDER

A. THOMAS SMALL, Chief Judge.

The matters before the court are Transamerica Commercial Financial Corporation's objections to claims. A hearing was held in Raleigh, North Carolina on January 20, 1994.

The chapter 7 debtor, Tart's T.V., Furniture and Appliance Company, Inc., operated a chain of appliance stores in North Carolina and South Carolina. The debtor closed its doors to the public on October 5, 1990, and effectively ceased operations. The debtor's chapter 7 petition was filed on January 2, 1991, and Carol A. Morrison was appointed trustee.

Transamerica, the debtor's largest creditor with a general unsecured claim of over $6,000,000, has undertaken the task of examining and objecting to claims filed against the estate. Many of the objections have already been resolved, and the subject of this opinion is claims arising from extended warranty contracts sold by Tart's to purchasers of appliances.

*Priority*

■ The first issue is whether claims based on extended warranty contracts are entitled to priority status under 11 U.S.C. § 507(a)(6). Section 507(a)(6) provides a sixth priority for

> allowed unsecured claims of individuals, to the extent of $900 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property, or the purchase of services, for the personal, family, or household use of such individuals, that were not delivered or provided.

11 U.S.C. § 507(a)(6).

Transamerica contends that the claimants bought the extended warranties with lump sum payments and that their payments are not "deposits" as the term is used in § 507(a)(6). This court has, without considering the issue, allowed § 507(a)(6) priority status to consumers who made lump sum payments for services that were never performed. *See, In re Carolina Sales Corp.,* 43 B.R. 596 (Bankr.E.D.N.C.1984) (cash deposits for tours to be provided by the debtor were allowed a priority status); *See also, Abbott v. Blackwelder Furniture Co.,* 33 B.R. 399 (W.D.N.C.1983); *In re P.J. Nee Company,* 36 B.R. 609 (Bankr.D.Md.1983); and *In re Longo,* 144 B.R. 305 (Bankr.D.Md.1992).

The two courts that considered this precise issue reached conflicting results. In *Bonner v. Allman (In re Heritage Village Church and Missionary Fellowship, Inc.),* 137 B.R. 888 (Bankr.D.S.C.1991), the bankruptcy court for the District of South Carolina held that lump sum payments were not deposits under § 507(a)(6). In *Heritage Village,* the claimants made lump sum payments to purchase lifetime interests in the debtor's theme park. The court held that a lump sum payment was not a "deposit" within the plain meaning of the term. This court, however, is of the opinion that the plain meaning of the

word "deposit" includes both partial and full payments.

The other court to consider the issue, the bankruptcy court for the District of Idaho, rejected the conclusion in *Heritage Village* and, relying in part on legislative history, held that "full payment for services is sufficient to meet the priority requirement." *In re Terra Distributing, Inc.*, 148 B.R. 598, 600 (Bankr.D.Idaho 1992).

This court agrees with the bankruptcy court in Idaho and concludes that the extended warranty claimants are entitled to a sixth priority to the extent of $900 pursuant to § 507(a)(6).

*Calculation of Amount of Claim*

The more difficult question is how to determine the amount of each claim.

The extended warranties sold by Tart's varied in length and in price according to the length of the warranty. Prior to Tart's going out of business on October 5, 1990, customers with extended warranty contracts could bring their appliances to Tart's for repairs. After October 5, 1990, Tart's did not honor warranty claims, and the customers were on their own.

Some extended warranty holders have made claims for repair costs incurred after Tart's closed but before the bankruptcy petition was filed. Others have made claims for repair costs incurred after the petition was filed. Finally, some claimants had no repair costs but have filed claims based on the termination of warranty coverage that occurred when Tart's closed its doors.

■ The court must determine the amount of each claim as of the date of the bankruptcy petition. 11 U.S.C. § 502(b). The court will allow a priority claim equal to the percentage of the time remaining under the warranty contract at the time of bankruptcy times the cost of the warranty. For example, if a customer bought a three-year extended warranty on January 2, 1990, for $300, the customer would have a priority claim for $200 (two thirds of the contract remained on the petition date of January 2, 1991, times the $300 cost of the contract equals a claim of $200).

■ Additionally, if a customer determined prior to bankruptcy that a repair covered by the warranty needed to be made, the cost of the repair, whether incurred before or after bankruptcy, will be added to the creditor's priority claim. The amount of any priority claim under § 507(a)(6) cannot exceed $900 and may also not exceed the amount of the "deposit," i.e., the amount that the customer paid for the extended warranty contract. If the amount of the claim exceeds those limitations, the balance will be a general unsecured claim.

If a creditor detected after the petition date that a repair was needed, the creditor will not have a claim for the repair, and the claim will be limited to the amount based on the percentage of the remaining term of the extended warranty contract.

The amount of the allowed claims arising pursuant to the extended warranty contracts shall be computed according to the formula established in this opinion.

SO ORDERED.