In re Roger & Karen GLASS, Debtors.

Roy V. WOLFE, III, Trustee, Movant,

v.

Catherine E. ABBEY, Respondent.

Bankruptcy No. 5–95–00674.

United States Bankruptcy Court,
W.D. Virginia.
Harrisonburg Division.

Dec. 6, 1996.

Roy V. Wolfe, III, Trustee, Harrisonburg, VA.

### DECISION AND ORDER

ROSS W. KRUMM, Chief Judge.

The matter before the court arises from the trustee's objection to the claim of Catherine E. Abbey (herein Abbey) for priority status under 11 U.S.C. § 507(a)(6) as a deposit creditor. The matter was taken under advisement after hearing on August 21, 1996, at which time the parties were afforded an opportunity to submit any additional authority in support of their positions. Abbey submitted additional authority to the court on September 3, 1996.

The issue that the court must decide is whether a loan of money, from the buyer of property to the seller, for the purpose of enabling the seller to complete the sale of the property, comes within the terms of 11 U.S.C. § 507(a)(6) as a "deposit" of money in connection with the purchase of property.

## Facts

Abbey, the claimant in this case, entered into a transaction to purchase real property from Roger and Karen Glass (herein the Debtors). To complete this transaction, the Debtors required an advance of $1,000.00. Abbey chose to loan this amount to the Debtors, evidencing the loan with a promissory note dated June 16, 1995. This loan did not affect the purchase price of the property. The transaction for the sale of land was completed on June 16, 1995. Approximately two months after this transaction, and before repayment of the loan was to commence, the Debtors filed a petition in bankruptcy.

Abbey argues that the $1,000.00 loan to the Debtors qualifies as a "deposit" within the meaning of § 507(a)(6), which would entitle her to a sixth priority claim against the bankruptcy estate. The trustee asserts that the claim is not a priority claim and should be accorded non-priority unsecured status.

## Law and Discussion

### I. Disposition of the Issue

■ Section 507(a)(6) reads:

"(a) The following expenses and claims have priority in the following order:

. . . . .

"(6) Sixth, allowed unsecured claims of individuals, to the extent of $1,800 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property, or the purchase of services, for the personal, family, or household use of such individuals, *that were not delivered or provided.*"

11 U.S.C. § 507(a)(6) (emphasis added).

A plain reading of § 507(a)(6) places Abbey's claim outside of the statute's terms. First, the transaction involved was a loan,

not a "deposit" as the term is meant to·be applied under § 507(a)(6). Abbey characterized this transaction as a loan, and evidenced the loan with a promissory note requiring repayment at set terms. Second, § 507(a)(6) requires that the subject property—here the real estate—not have been delivered. In this case the sale of the real estate was completed and Abbey came into possession of the property. Therefore, Abbey does not qualify for the protection which § 507(a)(6) provides to deposit creditors.

### II. The Meaning of "Deposit"

Deposit is not defined in the Bankruptcy Code. In *In re Heritage Village Church & Missionary Fellowship, Inc.,* 137 B.R. 888 (Bankr.D.S.C.1991), the court defined deposit as "putting down as a pledge or partial payment." *Heritage Village,* 137 B.R. at 896.[1] *Heritage Village* decided the issue of whether certain payments made to a religious organization were "deposits" within the meaning of § 507(a)(6). The payments had been solicited as part of a fund-raising campaign. The contributors expected the payments to confer benefits at a resort of the organization, however no specific rooming accommodations were promised nor were any other benefits promised as a result of the contributions. *Id.* at 896. The court held that the payments were not "deposits," but rather were more like gifts or investments. *Id.* Furthermore, the court did not believe a deposit relationship existed, because the payments made were complete payments and not partial payments. *Id.*[2] The court also found that benefits had been conferred to certain members of the plaintiff class prepetition. Therefore, the plaintiffs could not claim that services had not been delivered or provided. *Id.*

Additional case law clarifies the intended meaning of "deposit" under § 507(a)(6). In

---

1. Relying on this language, Abbey re-characterized the loan as a "pledge." (Abbey Addendum to Response to Trustee's Objection to Claim at 2.) However, the various legal definitions of "pledge" do not describe the transaction that occurred between Abbey and the Debtor. *See Black's Law Dictionary* 1153 (6th ed. 1990) (indicating that a pledge usually binds the pledgor or creates a security interest benefiting the pledgee).

2. Some courts disagree with *Heritage Village*'s characterization of a deposit as only including partial payments and would include situations where full payment had been put down. *See In re Tart's T.V., Furniture & Appliance Co.,* 165 B.R. 171, 172 (Bankr.E.D.N.C.1994); *In re Terra Distributing,* 148 B.R. 598, 600 (Bankr.D.Idaho 1992).

*In re Elsinghorst Brothers Co.,* 180 B.R. 52 (Bankr.W.D.N.Y.1995), the court considered the claim asserted by the Sisters of St. Joseph ("Sisters") as a consumer deposit creditor of the debtor, Elsinghorst Brothers Company ("Elsinghorst"). The Sisters put down $765 with Elsinghorst for the purchase of chocolate-making equipment. *Elsinghorst,* 180 B.R. at 52. The equipment was not delivered, and Elsinghorst filed for bankruptcy. The Sisters successfully brought a priority claim under § 507(a)(6) as a consumer deposit for the purchase of property that was not delivered. *Id.* at 53.

Another example of a deposit is money paid for the purchase of an extended warranty contract. This situation was discussed in *In re Tart's T.V., Furniture & Appliance Co.,* 165 B.R. 171 (Bankr.E.D.N.C.1994). The Debtor was a retailer of furniture, appliances and other electronic goods who also sold extended warranty contracts which provided for future repair services. *Tart's T.V.,* 165 B.R. at 172. The Debtor's largest creditor, Transamerica, objected to the claims of the extended warranty holders on the basis that their lump-sum payments for the warranties were not "deposits." *Id.* The court rejected this argument and stated that a deposit included both partial and full payments. *Id.* at 173. In this case the payments represented deposits for the purchase of services. To the extent that the warranty purchasers did not realize the benefits of their warranties, they were entitled to a priority claim.

Tuition payments have also qualified as deposits under § 507(a)(6). In *In re Longo,* 144 B.R. 305 (Bankr.D.Md.1992), tuition payments were made to the debtor who operated a vocational school (NTS). NTS filed for bankruptcy before delivery of all educational services for which the students had paid. The students filed a successful claim for priority under § 507(a)(6) to recover the tuition payments.

Tenant security deposits have also qualified as deposits under § 507(a)(6). In *In re River Village Associates,* 161 B.R. 127 (Bankr.E.D.Pa.1993), tenants were able to assert priority claims for the security deposits they had put down with their landlord, the Debtor. In *River Village* one of the Debtor's larger creditors, GECC, objected to the priority claims of the tenants. GECC argued that because the tenants had already occupied the rental property, the property had been "delivered" and the tenants therefore did not fall within the terms of § 507(a)(6). *River Village,* 161 B.R. at 133. The court rejected this interpretation, pointing out that such a reading of the section would afford protection only to those tenants who made security deposits but did not occupy the rental properties before the landlord filed for bankruptcy. In consumer leases, the court stated, this scenario rarely would arise. *Id.* Thus, the court held that the security deposits made in connection with the rental of property qualified as a priority claim under § 507(a)(6). *Id.* at 134.

None of the above examples is comparable to the case at bar. In addition, the legislative history of § 507(a)(6) reinforces the conclusion that the transaction between Abbey and the Debtors does not fall within the terms of the section. The House Report states that § 507(a)(6) was added to the Bankruptcy Code to deal with the problems faced by consumers who have deposited money with retail businesses for the purchase of goods and services. H.R.Rep. No. 595, 95th Cong., 1st Sess. 188 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6148. The House Report lists some examples of deposits, which include money paid "on a lay-away plan or as a deposit on merchandise, or [for] . . . a service contract or a contract for lessons or a gym membership." *Id.* Congress intended to protect such consumer depositors because of the likelihood that they would be unaware of their status as general unsecured creditors. *Id.* Furthermore, the typical consumer is not in a position to do a credit investigation on the retailer, nor to obtain special terms from the retailer as a "true creditor" would be able to do. *Id.*

■ Abbey correctly states that the legislative intent of the section was to protect individual consumers who were not in a position to protect themselves. (Abbey Addendum to Response to Trustee's Objection to Claim at 3.) However, Abbey is not in the same position as the consumers envisioned

by Congress. Abbey evidenced her loan with a promissory note, and nothing prevented her from further protecting herself. The fact that the Debtors required an advance of cash to complete the transaction could have served to inform Abbey that the Debtors' financial condition was not ideal. By contrast, the average consumer putting money down toward the purchase of goods or services might not see such obvious signs of a retailer's impending bankruptcy.

From the foregoing discussion of the cases and legislative history, a definition of "deposit" can be derived for the purposes of § 507(a)(6). Under that section, "deposit" can be defined as "the tendering of a consideration in order to purchase or rent specific property or services with the expectation that such consideration will be applied toward the purchase or rental of property or services, or be returned if either the property or services are not delivered or if the condition precedent for return of the consideration is fulfilled by the depositor." This definition covers the types of cases that have been decided under § 507(a)(6) and appropriately defines the intent of the legislature when it enacted the section.

The court concludes that a loan of money, from the buyer of property to the seller, for the purpose of enabling the seller to complete the sale of the property, is not a "deposit" within the meaning of § 507(a)(6).

For the foregoing reasons, it is

### ORDERED:

That the trustee's objection to claim number 11 is SUSTAINED. Accordingly, Abbey's claim for $1,000 will be accorded non-priority status as a general unsecured claim.