# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: FRANK SALAZAR; In re:
MARGARET SALAZAR,

　　　　　　　　　　*Debtors,*

―――――――――――――――

FRANK SALAZAR; MARGARET
SALAZAR,

　　　　　　　　　　*Appellants,*

　　　　　　v.

KATHLEEN A. MCDONALD;
ARMANDO FLORES; CHRISTINE
FLORES,

　　　　　　　　　　*Appellees.*

No. 04-15180

BAP No.
NV-03-01199-RyBK

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Ryan, Brandt, Klein, Bankruptcy Judges, Presiding

Submitted October 17, 2005*
San Francisco, California

Filed December 5, 2005

Before: Robert R. Beezer, Alex Kozinski, and
Ferdinand F. Fernandez, Circuit Judges.

Opinion by Judge Fernandez

―――――――――――――――

*The panel unanimously finds this case suitable for decision without
oral argument. Fed. R. App. P. 34(a)(2).

15699

## COUNSEL

Christopher P. Burke, Las Vegas, Nevada, for the appellants.

Christine Flores, Las Vegas, Nevada, (pro se) for the appellees.

## OPINION

FERNANDEZ, Circuit Judge:

Frank and Margaret Salazar, the debtors in a Chapter 13[1] bankruptcy proceeding, appeal the decision of the bankruptcy appellate panel which affirmed the bankruptcy court's deter-

---

[1]11 U.S.C. §§ 1301-1330.

mination that Armando and Christine Flores have a priority claim in bankruptcy.[2] We affirm.

## BACKGROUND

The Salazars owned a swimming pool contracting business, and the Floreses hired them to build a pool at the Floreses' residence. The Floreses agreed to and did pay the full amount of the purchase price — $30,829 — at the time that they entered into the contract, and the Salazars commenced work.[3] They never finished the job. By the time they filed for bankruptcy some 17 months later, the project was just 50-70 percent complete. The Floreses, acting pro se, filed an answer to the petition in bankruptcy on March 22, 2002. That was filed within the time for filing a claim, but they did not file a formal proof of claim until later.

In their formal proof of claim, the Floreses sought to have their claim treated as secured. The Salazars ultimately objected to the claim, and the bankruptcy court determined that the claim was not secured at all. But, said the court, it was a priority claim to the extent of $2,100. *See* 11 U.S.C. § 507(a)(6) (consumer deposit).[4]

The Salazars appealed that determination, and the BAP affirmed. This appeal followed.

---

[2]The Salazars have also raised a number of other issues. We have addressed those in an unpublished memorandum disposition filed this date.

[3]The contract itself appears to contemplate an ultimate payment of $50,000, but after the Floreses paid the $30,829, the Salazars gave a receipt for payment in full.

[4]The statutory amount was adjusted to $2,225, effective April 1, 2004, but that does not affect this case.

## JURISDICTION AND STANDARDS OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 158(d).

We review the BAP's decision de novo. *See Ehrenberg v. Cal. State Univ., Fullerton Found. (In re Beachport Entm't)*, 396 F.3d 1083, 1086 (9th Cir. 2005); *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002). More specifically, we review the bankruptcy court's decision without according any deference to the BAP. *See, e.g.*, *Classic Auto Refinishing, Inc. v. Marino (In re Marino)*, 181 F.3d 1142, 1144 (9th Cir. 1999). Accordingly, we independently review the bankruptcy court's rulings. *See Miller v. Cardinale (In re DeVille)*, 361 F.3d 539, 547 (9th Cir. 2004); *Havelock v. Taxel (In re Pace)*, 67 F.3d 187, 191 (9th Cir. 1995).

We review the bankruptcy court's conclusions of law de novo and its factual findings for clear error. *Neilson v. United States (In re Olshan)*, 356 F.3d 1078, 1083 (9th Cir. 2004). We review its interpretation of the bankruptcy code as a question of law and, therefore, review it de novo. *Bunyan v. United States (In re Bunyan)*, 354 F.3d 1149, 1150 (9th Cir. 2004).

## DISCUSSION

The issue before us is the question of whether the consumer deposit priority provision can apply where the consumer has paid the whole contract price, rather than only a portion of that price.

**[1]** Congress has provided that level 6 priority is accorded to:

> allowed unsecured claims of individuals, to the extent of [$2,100] for each such individual, arising from the deposit, before commencement of the case, of money in connection with the purchase, lease, or

> rental of property, or the purchase of services, for the personal, family, or household use of such individuals, that were not delivered or provided.

11 U.S.C. § 507(a)(6). There can be no doubt that what was paid over by the Floreses to the Salazars was for the purchase of property and services for personal, family and household use. The dispute before us is over whether the payment of the whole amount ($30,829) took that payment out of the "deposit" realm.

We think it highly unlikely that in drafting this consumer protection provision, Congress intended to protect consumers who had been induced to pay over a portion of the purchase price in advance, but not those who were induced to pay over the whole amount.

**[2]** We cannot ignore the plain and ordinary meaning of the words actually used by Congress. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491, 119 S. Ct. 2139, 2150-51, 144 L. Ed. 2d 450 (1999); *United States v. 144,774 Pounds of Blue King Crab*, 410 F.3d 1131, 1134 (9th Cir. 2005). In fact, if the language of a statute is clear, we look no further when we seek to ascertain its meaning. *See Or. Natural Res. Council, Inc. v. Kantor*, 99 F.3d 334, 339 (9th Cir. 1996).

**[3]** Black's refers to a deposit as "[m]oney placed with a person as earnest money or security for the performance of a contract." Black's Law Dictionary 471 (8th ed. 2004). Webster's Second referred to a deposit as, among other things, an amount given as earnest money or forfeit. Webster's Second Int'l Dictionary 702 (1958). Webster's Third says the same, but adds that it can also be a "partial and first payment on account of the purchase price of property." Webster's Third New Int'l Dictionary 605 (1986). And still another definition is to "give a sum of money as part payment or security." Encarta World English Dictionary 485 (1999). Thus, while a part payment is what one often thinks of when one hears the

word "deposit," nothing in that word precludes handing over more than a mere portion of the whole price. In fact, it is not unusual to see requests for the full price where unique or personalized goods are to be made for the customer or where a contract for services to be performed over time — for example, a payment in advance for newspaper delivery or for a home security system — is involved. In short, on its face the meaning of the word is clear.

**[4]** For the most part, courts that have considered the issue agree with our intuition that full payment by a consumer for goods or services to be rendered over time is a deposit within the meaning of the law. When a full payment had been made, one court noted, as we have, that deposit is not defined in the code; expressed doubt about the proposition that while partial payment was a deposit, full payment could not be; and referred to the already noted report. *See In re Terra Distrib., Inc.*, 148 B.R. 598, 600-01 (Bankr. D. Idaho 1992). That court then added that there was "no reason to assume that 'deposit' includes full payment for services, but not full payment for goods." *Id.* at 601. When faced with prepaid extended warranty contracts, another court merely agreed with *Terra Distributing, Inc.* and held that 507(a)(6) priority did obtain. *In re Tart's T.V., Furniture & Appliance Co., Inc.*, 165 B.R. 171, 173 (Bankr. E.D.N.C. 1994).

Yet another court confronted a situation where claimants had forwarded money to the debtor for the purchase of gold and silver coins. *In re DeAngelis Tangibles, Inc.*, 238 B.R. 96, 97 (Bankr. M.D. Pa. 1999). There was no discussion about the other elements of § 507(a)(6), but as to "deposit" the court had this to say:

> The word deposit has several ordinary meanings. One such understanding can be found in Comment a to Section 44 of the Restatement of Contracts wherein the term deposit refers to money or other property transferred by an offeror to the account of

> the offeree in conjunction with an offer. Certainly, this reference to deposit is not subject to any limitation as to the percentage of the total consideration. While the circumstances surrounding the transfer of funds from the claimants, precious metal investors, to the Debtor, precious metal supplier, are uncertain, what is beyond question is these funds were transferred to the Debtor as part of an agreement to purchase coins or precious metals.

*Id.* at 98 (internal citation omitted). The court went on to opine that "funds advanced in furtherance of a purchase order comport with the common understanding of the term deposit without expansive maneuvering." *Id.* at 99.

And in another case, the debtor had sold gift certificates to the public and then went bankrupt before those were redeemed for merchandise. *In re WW Warehouse, Inc.*, 313 B.R. 588, 590 (Bankr. D. Del. 2004). The court had little difficulty in determining that there is nothing to suggest that, "when applied to a consumer purchase, a deposit must *only* be a partial payment of a purchase price and for specific merchandise. A down-payment, generally thought to be a partial payment, is only one of the definitions." *Id.* at 592. In fact, the court pointed out that the section itself was created to obviate the kind of problems that had occurred when a large retailer issued scrip to be used for the purpose of buying merchandise from it, but then became bankrupt before the scrip was actually redeemed. *Id.* at 594-95. The court held that there was priority.

The Salazars point to one case to the contrary. *See Bonner v. Allman (In re Heritage Vill. Church & Missionary Fellowship, Inc.)*, 137 B.R. 888 (Bankr. D.S.C. 1991). That case presented most peculiar facts. A tele-evangelist did what is known as premium-driven fundraising. People donated to the cause and got something in return. *Id.* at 890-91. Before financial bankruptcy caught up with the evangelist (perhaps

moral bankruptcy came earlier), the donations were referred to as gifts or investments, and certificates and benefits were delivered. *Id.* at 891. Thereafter, some of the donors asserted that the donations were actually deposits for benefits to be received in the future. *Id.* at 890. At best, that claim was at the outer limit of anybody's notion of a "deposit."

**[5]** Still and all, the court partially rested its opinion that the gifts were not deposits on the difference between partial and full payment. *Id.* at 895-96. In so doing, the court took an unduly crabbed view of what a deposit can be. Perhaps, it did so because the issue was somewhat obscured by the tele-evangelist's clever mixing of gift and investment opportunities for the faithful, a situation that, again, seemed rather antithetical to the meaning of a deposit. In any event, we see no reason to limit "deposit" in a situation where, as here, the funds were given by a consumer for property or services to be provided by the debtor and those were not forthcoming before bankruptcy.

**[6]** Merchants' violation of consumers' expectations and trust is precisely what Congress responded to when it passed the statute in question. That Congress's concern had bounds is shown by its express limitation of the amount of the priority. There is no reason to think that it buried a further limitation in the word "deposit." In fine, the money paid over by the Floreses for the creation of a swimming pool was a deposit.

## CONCLUSION

Perhaps nobody should be credulous enough to give a contractor or a merchant the whole payment for goods and services up front, rather than some fraction of the payment. But people do. We can be certain that Congress was concerned about consumers who were induced to make deposits. But did that concern end when a consumer made the bevue of depositing the full payment? We see no reason to say that it did, and

Congress's use of the word "deposit" does not compel a contrary answer.

**[7]** Thus, we hold that "deposit" as used in 11 U.S.C. § 507(a)(6) may include the advance handing over of full payment for consumer goods or services, and that it did include the Floreses' payment to the Salazars.

AFFIRMED.