**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| KEYWORD ROCKSTAR, INC., JON SHUGART & LUKE SAMPLE, | Nos. 19-60031, 19-60032 |
| Plaintiffs-Appellants, | BAP Nos. 18-1269-KuFB, 18-1278-KuFB |
| v. | |
| JORDON WALLACE SCHULTZ. | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Kurtz, Faris, and Brand, Bankruptcy Judges, Presiding

Argued and Submitted June 1, 2020[*]
Pasadena, California

Before: RAWLINSON and N.R. SMITH, Circuit Judges, and KORMAN,[**] District Judge.

Keyword Rockstar, Inc., Jon Shugart, and Luke Sample (collectively, "Appellants") appeal from the decision of the Bankruptcy Appellate Panel ("BAP") reversing the bankruptcy court and holding that Appellee Jordon Schultz was

---

[*]   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]   The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

entitled to have his debts discharged in his personal Chapter 7 bankruptcy case. "[W]e review the bankruptcy court's decision without according any deference to the BAP." *Salazar v. McDonald (In re Salazar)*, 430 F.3d 992, 994 (9th Cir. 2005). The bankruptcy court's factual findings are reviewed only for clear error. *Id.* We have jurisdiction pursuant to 28 U.S.C. § 158(d)(1), and we reverse the BAP and remand.

The bankruptcy court did not clearly err in finding that Schultz fraudulently undervalued his customer and lead lists in connection with the bankruptcy case of his solely-owned business, JWS Publishing, Inc., in violation of 11 U.S.C. § 727(a)(4)(A), *see Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1197 (9th Cir. 2010), which requires that Schultz be denied a discharge in his personal bankruptcy case pursuant to § 727(a)(7). To establish a violation of § 727(a)(4), Appellants were required to show that: "(1) [Schultz] made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." *Id.* (quoting *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (B.A.P. 9th Cir. 2005)).

First, the bankruptcy court's determination, that Schultz's $778.60 valuation of the customer and lead lists was false, finds support in the record and is not illogical or implausible. Indeed, Schultz previously represented to his customers that the lists were "valued at $1,000,000," and Schultz used the lists to generate close to

$6,000,000 in gross sales in 2015 and 2016. Additionally, Shugart testified that, between two valuations of the lists at $1,000,000 or $742, the $1,000,000 valuation was the more accurate valuation. Moreover, although Schultz testified that the lists were only worth $1,000,000 to him, because the individuals on the lists had a relationship with him and were more likely to purchase from him, the bankruptcy court found Schultz's explanation of the "low value [was] not credible." The bankruptcy court's factual finding that Schultz falsely undervalued the lists, which was based in part on the bankruptcy court's determination that Schultz's explanation was not credible, is therefore entitled to "great deference." *See id.* at 1196.

Second, the bankruptcy court did not clearly err in finding the false oath "related to a material fact." *See id.* at 1197 (quoting *Roberts*, 331 B.R. at 882). In light of Schultz's representation that the lists were worth $1,000,000, the bankruptcy court did not clearly err in finding Schultz "grossly undervalued" the lists at $778.60 and the undervaluation was, therefore, "clearly material" to the administration of Schultz's estate. *See id.* at 1198 ("A fact is material 'if it bears a relationship to the debtor's . . . estate . . . .'" (citation omitted)).

Third, the bankruptcy court did not clearly err in finding Schultz acted "knowingly in making the false oath." *See id*. The bankruptcy court found that Schultz "had to have known the list had far more value than he scheduled," and pointed: (1) to the disparity between the scheduled value of the lists and their

potential value (if they had been fairly valued in the schedules); and (2) Schultz's trial testimony that he was successfully using the lists to market products to individuals in relation to his new business, Verticode. In fact, Schultz so successfully utilized the lists post-abandonment in his new business that he received a capital distribution from Verticode in the approximate amount of $53,000. This is sufficient to support the bankruptcy court's finding that Schultz acted knowingly. *See id.*

Finally, the bankruptcy court did not clearly err finding that Schultz made the oath with fraudulent intent. *See id.* at 1197, 1198–99. The bankruptcy court specifically found that, "where (as here) there is a great disparity between the scheduled value of an asset and its potential value if fairly valued, the court may draw an inference that the debtor has knowingly and fraudulently made a false oath . . . ." Indeed, "the size or nature of a single [misstatement or omission], might suffice to support a finding that a debtor knowingly and fraudulently made a false oath or account." *Khalil v. Developers Sur. & Indem. Co. (In re Khalil)*, 379 B.R. 163, 176 (B.A.P. 9th Cir. 2007), *aff'd*, 578 F.3d 1167, 1168 (9th Cir. 2009) (stating "[t]he BAP's published opinion is a correct statement of the applicable law, and we expressly approve of that opinion by our decision today"). Ultimately, we are unable to say the bankruptcy court's finding that Schultz had the requisite fraudulent intent was illogical, implausible, or without support in the record.

Moreover, the finding that Schultz acted knowingly and fraudulently by

deliberately undervaluing the lists is not inconsistent with the bankruptcy court's related findings that Schultz's initial failures to include the value of his Rolex watch and bitcoin assets in his personal bankruptcy filings were attributable to his mental disability, rather than an intent to defraud. The bankruptcy judge permissibly reasoned that, while those were merely omissions that could be attributed to his forgetfulness and lack of focus, his undervaluing of the lists—a commission rather than an omission—could not be so innocently explained. Thus, the bankruptcy court's findings are not inconsistent.

Because the bankruptcy court did not clearly err in denying Schultz's discharge pursuant to 11 U.S.C. § 727(a)(7), based on the violation of § 727(a)(4)(A) in JWS Publishing, Inc.'s bankruptcy case, we need not reach Appellants' alternative argument under § 727(a)(5). *See Robertson v. Swanson (In re Swanson)*, 36 B.R. 99, 100 (B.A.P. 9th Cir. 1984) ("Each ground, if proven, is alone sufficient to deny discharge under § 727(a).").

**REVERSED** and **REMANDED** to the BAP with instructions to affirm the judgment of the bankruptcy court.