**In re Donald J. UDHUS, doing business as Times Square Antique & Craft Mall, Debtor.**

**CITYBANK, Appellant,**

v.

**Donald J. UDHUS, Appellee.**

**BAP No. WW–97–1630–HMeR.**
**Bankruptcy No. 95–10445.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Feb. 19, 1998.

Decided March 5, 1998.

Edward P. Weigelt, Hutchison, Foster & Weigelt, Lynnwood, WA, for CityBank.

Ronald W. Goss, Shulkin, Hutton, Inc., Seattle, WA, for Donald J. Udhus.

Before HAGAN, MEYERS, and RUSSELL, Bankruptcy Judges.

## OPINION

HAGAN, Bankruptcy Judge.

### I.

The Appellant, CityBank, loaned the Appellee, Donald Udhus, doing business as Times Square Antique and Craft Mall, $595,-714.04, secured by real property known as the Times Square Antique & Craft Mall. Udhus defaulted in his payments and filed a chapter 11[1] petition. His third chapter 11 plan provided for a sale of the real property at a price sufficient to allow payment of all creditors in full. The plan also provided for a cure of the default in the CityBank loan. CityBank filed a claim in the chapter 11 case including demands for default interest and administrative fees and costs incurred as a result of the default. The bankruptcy court denied these parts of the CityBank claim. Because the default had been cured, we AFFIRM the bankruptcy court's ruling.

### II.

CityBank's loan to Udhus was made on February 29, 1992. The loan agreements executed by the parties provided for a non-default variable interest rate with a minimum rate of 10% and a maximum rate of 25%. The actual rate during the term of the loan varied between 10.5% and 11.5%. In the event of a default, the loan agreements allowed CityBank to charge interest at the rate of 21%, in lieu of the variable non-default rate. Also in the event of default, the promissory note provided for acceleration of the loan balance and for recoupment by City-Bank of its attorney's fees and legal expenses and of its own administrative fees and costs.

Udhus defaulted on the loan in 1995 and filed his voluntary chapter 11 petition on November 30, 1995. Unable to obtain confirmation of two proposed plans of reorganization, Udhus elected to sell the real property and pay all creditors in full. On June 3, 1997, he filed a third plan of reorganization providing for the sale of the Mall for $1,500,-000.00 with the proceeds to be used to pay all creditors in full, and the balance distributed to Udhus. The plan also provided for the cure of default on the CityBank loan. This plan was confirmed by the bankruptcy court on June 3, 1997. The Times Square Antique & Craft Mall was sold shortly thereafter.

---

1. Unless otherwise indicated, all references to "chapter" and "section" are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1330, and all references to "rule" are to the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.") 1001 – 9036, which make applicable certain Federal Rules of Civil Procedure ("Fed.R.Civ.P.").

CityBank filed its claim on May 1, 1997. The claim included $555,282.16 as the unpaid principal balance. This amount, and non-default accrued interest, was paid to City-Bank in June 1996 in accordance with the chapter 11 plan. CityBank's claim also included default interest; its costs of attorney's fees and attorney's costs; its own administrative fees and costs of $22,575.00; damages for the cost of loan reserves in the amount of $2,642,00; and $49,622.01 as lost opportunity costs.

Udhus objected to these costs. A hearing was held by the bankruptcy court on August 8, 1997, on Udhus's objection. Following the hearing, the court entered an order disallowing CityBank's claim for default interest and administrative fees and costs, but allowed CityBank's claim for $40,036.95 for attorney's fees and costs. This sum included $31,607.80 for attorney's fees, attorney's costs of $4,036.25, and "fees for experts" of $4,390.90.

CityBank timely appealed this order.

### III.

CityBank contends in this appeal it is entitled to recover every claim allowed in the loan agreements, regardless of the cure of the default, since all creditors are being paid in full. CityBank argues it is entitled to default interest or, alternatively, its loss of opportunity costs, and its claim for administrative expenses.

### IV.

■ Statutory interpretations are questions of law and are reviewed *de novo*. *Anderson v. City of Bessemer*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). The denial of a claim for default interest is based on statutory interpretation. The denial of a claim for administrative expenses is reviewed for an abuse of discretion. *Irmas Family Trust v. Madden (In re Madden)*, 185 B.R. 815, 816 (9th Cir. BAP 1995).

### V.

CityBank argues the bankruptcy court had discretion to make the award of default interest and administrative costs, and since all creditors were to be paid in full the bankruptcy court abused its discretion by not awarding these portions of the CityBank claim. The bankruptcy court concluded the decision in *In re Entz–White Lumber and Supply, Inc.*, 850 F.2d 1338 (9th Cir.1988), was determinative of the invalidity of the CityBank claim for default interest and administrative costs.

In *Entz–White*, a secured creditor had objected to confirmation of the debtor's chapter 11 plan for the reason, among others, that the plan did not allow for the creditor's claim for default interest. The creditor contended the § 1123(a)(5)(G) [2] "cure" did not relieve the debtor from paying default interest.

The Court of Appeals for the Ninth Circuit rejected this argument, holding a § 1123 cure relates to any default. The court adopted the definition of "cure" formed by the Court of Appeals for the Second Circuit in *In re Taddeo*, 685 F.2d 24 (2d Cir.1982) that "[a] default is an event in the debtor-creditor relationship which triggers certain consequences.... Curing a default commonly means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified. This is the concept of 'cure' used throughout the Bankruptcy Code." *Entz–White*, 850 F.2d at 1340 (quoting *Taddeo*, 685 F.2d at 26–27).

CityBank contends *Entz–White* does not support the bankruptcy court's decision, but offers an argument that *Entz–White* allows interest at a market rate, and thus a bankruptcy court has discretion to allow default interest. CityBank relies on a footnote in *Entz–White* that states: "We continue, of course, to recognize bankruptcy courts' 'broad equitable discretion' in awarding post-petition interest. *See In re Anderson*, 833 F.2d 834, 836 (9th Cir.1987)." *Entz–White*, 850 F.2d at 1343 n. 9.

---

2. 1123(a)(5)(G) provides:
   (a) Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall—
   ....
   (5) Provide adequate means for the plan's implementation, such as—
   ....
   (G) curing or waiving of any default.

This footnote relates to an argument of the secured creditor, Great Western, that it was entitled to default interest under § 506(b) as an over-secured creditor. The court of appeals explains why default interest is not allowable under § 506(b) [3] or § 1124(2)(A) [4]:

> The more natural reading of sections 506 and 1124 is that the interest awarded should be at the market rate or at the pre-default rate provided for in the contract. *See In re Southeast Co.*, 81 B.R. 587, 592 (9th Cir. BAP 1987)(holding that reliance damage under § 1124(2)(C) "does not comprise contractual penalty interest rates").

*Entz–White*, 850 F.2d at 1343 (footnote omitted).

We do not agree with CityBank's analysis of *Entz–White*. The above discussion is concerned with awarding default interest to a secured creditor under § 506(b). *Entz–White* reiterates the holding of *In re Anderson*, 833 F.2d 834, 836 (9th Cir.1987), that lost opportunity costs are not an allowed claim under § 506(b). *Entz–White*, 850 F.2d at 1343 n. 8.

■ Under *Entz–White*, a § 1123 cure corrects all defaults and prohibits an award of default interest. The case also denied default interest under § 506(b). *Entz–White*, 850 F.2d at 1342–43. The case supports the bankruptcy court's denial of City-Bank's claim for default interest.

Continuing its contention of entitlement to default interest under § 506(b) and § 1124(2)(A), CityBank argues *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), changes the effect of *Entz–White* by inferentially allowing default interest under either of those sections of the bankruptcy code.

We do not interpret *Ron Pair* to allow default interest under either section § 506(b) or § 1124(2)(A). A footnote in *Entz–White* explains the lack of relevance of § 1124.

> Only impaired parties have the right to vote on the reorganization plan. "A class which is not impaired under § 1124 is conclusively presumed to have accepted the plan. . . ." 5 L. King, *Collier on Bankruptcy* ¶ 1124.03, at 1124–10 (15th ed.1988). "[S]ection 1124(2) permits the plan to reinstate the original maturity of the claim or interest as it existed before the default without impairing such claim or interest." *In re Madison Hotel Assocs.*, 749 F.2d 410, 420 (7th Cir.1984) (quoting 5 L. King, *Collier on Bankruptcy* ¶ 1124.03[2] at 1124–14 (15th ed.1979)); *see In re Metz*, 820 F.2d 1495, 1497 (9th Cir.1987).
>
> Great Western ignores the broad language of § 1123, which would appear to allow debtors to cure this type of default even if a party with a claim cured in this way would be impaired under § 1124. . . .

*Entz–White*, 850 F.2d at 1340 n. 3. Nor was default interest under 506(b) an issue in *Ron Pair*.

Since § 1124 is not applicable to the issues in any of these cases because that section defines "impairment," and § 506(b) was not an issue in *Ron Pair*, we reject this argument.

CityBank next advances a "balancing of the equities" argument based on *In re Casa Blanca Project Lenders, L.P.*, 196 B.R. 140 (9th Cir. BAP 1996). Under this authority CityBank again argues a bankruptcy court has equitable discretion to award default interest.

*Casa Blanca* involved a question of a secured creditor's right to default interest un-

---

3. Section 506(b) provides:

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

4. Section 1124(2)(A) provides:

Except as provided in section 1123(a)(4) of this title, a class of claims or interests is impaired

under a plan unless, with respect to each claim or interest of such class, the plan—

. . . .

(2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default—

(A) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title;

der § 506(b). The *Casa Blanca* opinion acknowledges a court has general discretion to order a higher rate of interest than the contract rate in order to achieve "a balance of equities between creditor and creditor [and] between creditors and the debtor." *Casa Blanca*, 196 B.R. at 142 (quoting *Vanston Bondholders Protect. Comm. v. Green*, 329 U.S. 156, 165, 67 S.Ct. 237, 241, 91 L.Ed. 162 (1946)).

According to the opinion:

In keeping with *Vanston* and *Ron Pair*, bankruptcy courts considering the issue generally apply the contract rate subject to rebuttal based upon equitable considerations. *See, e.g., In re Terry Ltd. Partnership*, 27 F.3d 241, 243 (7th Cir.) *cert. denied sub nom.*, 513 U.S. 948, 115 S.Ct. 360, 130 L.Ed.2d 313 (1994); *In re Boardwalk Partners*, 171 B.R. 87, 91 (Bankr.D.Ariz. 1994); *In re DWS Investments, Inc.*, 121 B.R. 845, 846 (Bankr.C.D.Cal.1990); *In re Hollstrom*, 133 B.R. 535, 537 (Bankr. D.Colo.1991). When default interest is at issue, this approach allows a court to examine the specific facts of each case and determine whether the circumstances warrant application of the higher rate.

. . . .

The above analysis, however, does not take into account the proper course when a debtor cures the default. When a plan provides for the complete cure of an oversecured obligation, a court must also determine whether the higher default rate is allowable under § 506(b). Courts generally hold that a cure "nullifies all consequences of the default—including the higher postdefault interest rate." *In re Johnson*, 184 B.R. 570, 574 (Bankr. D.Minn.1995) (citing *In re Southeast Co.*, 868 F.2d 335, 338 (9th Cir.1989)). Thus, a cure pursuant to a plan of reorganization prevents application of default interest. *In re Southeast Co.*, 868 F.2d at 338 (claim unimpaired under § 1124(2), creditor not entitled to postpetition interest at default rate); *In re Entz–White Lumber & Supply, Inc.*, 850 F.2d 1338, 1342 (9th Cir.1988) ("and by curing the default, Entz–White is entitled to avoid all consequences of the default—including higher post-default interest rates").

*Casa Blanca*, 196 B.R. at 143 (footnotes omitted). Further,

[i]n the context of this case, consideration of whether a given default rate is within the range of a generally acceptable level of interest is not determinative.... While an oversecured creditor's damages should be properly compensated, cure plus actual loss, if any, provides such compensation. Anything beyond this would constitute a penalty on the debtor. Equitable considerations do not countenance such a result.

*Casa Blanca*, 196 B.R. at 146–147.

A distinguishing fact between *Casa Blanca* and the instant case is the form of the cure of the default. In *Casa Blanca*, the secured creditors' claim was cured by a sale of the real property and payment of the secured creditor's claim under § 506(b) and excluded default interest. In this case, the cure was effectuated under Udhus's chapter 11 plan and § 1123. *Casa Blanca* does not serve as authority for CityBank's argument. The bankruptcy court had no discretion to award default interest.

CityBank further contends it is entitled to its claim for administrative costs. This portion of the claim is composed of lost opportunity costs consisting of lost loan fees and interest thereon. It is merely a way of asking for the equivalent of default interest. The remainder of the claim is for time spent by CityBank officers or employees in loan committee meetings, and for reserves maintained by the bank for the loan loss. The bankruptcy court held these portions of the claim were not reasonable.

■ Under § 506(b) four elements must be satisfied if fees and costs are allowed. First, the creditor must have an allowed secured claim; second, the creditor's security agreement must provide for the requested charge; third, the creditor must be over secured; and fourth, the fee or cost must be reasonable. *In re Salazar*, 82 B.R. 538, 540 (9th Cir. BAP 1987).

■ In finding that CityBank's requested administrative fees and costs were not reasonable, the court commented that CityBank

would have to pay the personnel costs regardless of the Udhus loan problem. Also, since the loss of opportunity costs is the same as the loss of default interest, it would be unreasonable to include this part of the claim as an allowable administrative expense. The alleged loss of loan reserve funds would fall into the same category of default interest as lost opportunity costs. CityBank impliedly acknowledges it would not be entitled to both default interest and lost opportunity costs. To deny CityBank its default interest and allow it lost opportunity costs would be contrary to § 1123 and *Entz–White*. The court did not abuse its discretion in this finding.

## VI.

In summary, the bankruptcy court correctly followed *In re Entz–White Lumber and Supply, Inc.*, 850 F.2d 1338 (9th Cir.1988), in denying CityBank's claim for default interest. The default in the CityBank loan was cured under § 1123. The cure returned the status of the parties to the same relationship under the loan that existed prior to the default. Udhus's plan paid all creditors in full including CityBank. CityBank was paid in full by receiving its contract interest at the non-default rate. The bankruptcy court did not abuse its discretion in finding CityBank's claim for administrative expenses unreasonable. We AFFIRM the decision of the bankruptcy court.