314 F.3d 1070
 In re SYLMAR PLAZA, L.P.; In re Steven Henry Hornwood; In re Rita Holtzman Hornwood; In re Roberta May Hornwood, Debtors.
Platinum Capital, Inc., Appellant,
v.
Sylmar Plaza, L.P.; Rita Holtzman Hornwood; Steven Henry Hornwood; Roberta May Hornwood, Appellees.
 No. 00-57210.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted September 11, 2002.
 Filed December 30, 2002.
 
 1
 Edward M. Wolkowitz, Robinson, Diamant & Wolkowitz, Los Angeles, CA, for the appellant.
 
 
 2
 Bennett L. Spiegel, Kirkland & Ellis, Los Angeles, CA, for the appellees.
 
 
 3
 Appeal from the Ninth Circuit Bankruptcy Appellate Panel; Klein, Montali, and Brandt, Bankruptcy Judges, Presiding. BAP No. CC-00-01277-KMoB.
 
 
 4
 Before: THOMPSON and RAWLINSON, Circuit Judges, and SCHWARZER,* Senior District Judge.
 
 
 5
 SCHWARZER, Senior District Judge.
 
 
 6
 Platinum Capital, Inc. ("Platinum") appeals a decision of the Bankruptcy Appellate Panel ("BAP") affirming the bankruptcy court's order that confirmed the chapter 11 plan of reorganization of appellees Sylmar Plaza, L.P. and Rita H. and Roberta M. Hornwood ("the Hornwoods").[1] We must decide whether the bankruptcy court erred in finding a plan of reorganization was proposed in good faith under 11 U.S.C. § 1129(a)(3) where its sole purpose was to enable the debtors to "cure and reinstate" an obligation, thereby avoiding a contractual liability for default interest. We have jurisdiction under 28 U.S.C. § 1158(d) and affirm.
 
 FACTUAL BACKGROUND
 
 7
 The Hornwoods have a diverse real estate portfolio worth more than $55 million in which they have a net equity exceeding $15 million. Their assets included Sylmar Plaza, a shopping center, which is the focus of the litigation between the Hornwoods and Platinum. The dispute arises over a secured loan of $8,073,237 made to the Hornwoods in 1992 by Platinum's predecessor, Tokai Bank of California. In 1995, Tokai consented to the transfer of Sylmar to revocable family trusts, ostensibly created for estate planning purposes. The "Loan Assumption and Modification Agreement" attendant to that consent made three material changes in the loan agreement between the Hornwoods and Tokai: it changed the original variable interest rate to a fixed rate of 8.87% and a default interest rate of 13.87%; it extended the maturity date to April 3, 2000; and it forbade prepayment.
 
 
 8
 Sylmar apparently encountered cash flow problems beginning in 1995. In October 1997, the Hornwoods made their last payment to Tokai on the Sylmar loan, allowed taxes to become delinquent, and transferred Sylmar (without Tokai's required consent) to a new limited partnership, Sylmar Plaza, L.P. Simultaneously, they transferred the balance of their real estate portfolio to four other newly-created limited partnerships.
 
 
 9
 In June 1998, Tokai filed a judicial foreclosure action in state court against the Hornwoods, their two family trusts, and Sylmar Plaza, L.P. Tokai then sold its note to Platinum, which continued to prosecute the judicial foreclosure action through trial.
 
 
 10
 Sylmar Plaza, L.P. filed this chapter 11 case the day after the state court issued its Statement of Intended Decision in favor of Platinum on all issues in the judicial foreclosure action. Platinum promptly moved for relief from the automatic bankruptcy stay, in response to which the Hornwoods filed individual chapter 11 cases.
 
 
 11
 The bankruptcy court permitted Sylmar Plaza to be sold for approximately $7 million free and clear of Platinum's lien, notwithstanding Platinum's claim that its lien exceeded $10 million. Because Platinum did not appeal the sale order, its claim was bifurcated into a secured claim measured by the net proceeds of the sale of Sylmar Plaza (plus funds in the hands of the receiver appointed by the state court) and an unsecured claim for the balance.
 
 
 12
 The confirmed plan of reorganization provided for payment of both Platinum's secured claim and its unsecured claim in full on the effective date of the plan. The procedural significance of this treatment was that Platinum's claims would not be "impaired" under the plan and it would, therefore, not be entitled to reject the plan or receive "cram down" protections, including protection against "unfair discrimination" under 11 U.S.C. § 1129(b).[2] The financial significance was to effect a "cure" of the default so that all interest, including post-petition interest, would be calculated at the 8.87% non-default rate, rather than the 13.87% default rate.[3] The difference in accrued interest calculated between the two rates amounts to approximately $1 million. All other unsecured claims were to be paid 10% interest retroactive to the filing date of the bankruptcy case.
 
 
 13
 Platinum objected to confirmation, contending that the plan had not been "proposed in good faith" as required by 11 U.S.C. § 1129(a)(3). It made two arguments. First, it contended that examination of the various classes of claims revealed that the entire plan was conceived as a sham that had no material economic impact other than to deprive Platinum of the $1 million in default interest. Second, it argued that paying all other unsecured classes 10% post-petition interest while it would only receive 8.87% post-petition interest was so unfairly discriminatory as to cast doubt on the plan's "good faith." The bankruptcy court overruled Platinum's objections, stating:
 
 
 14
 Well, I am going to find that I believe that all the requirements to have the plan confirmed have been satisfied under § 1129, including but not limited to § 1129(a)(3). I do believe that the plan has been proposed in good faith, given the — all the facts in the record and really the history of the case as well.
 
 
 15
 On appeal to the BAP, Platinum did not challenge the bankruptcy court's factual findings but contended that the debtors could not in good faith design a plan expressly to exploit § 1124(2) exclusively to their advantage. The BAP rejected the proposed per se rule, holding that good faith is determined by consideration of the totality of the circumstances on a case-by-case basis. Accepting that the debtors' main purpose was to vitiate Platinum's right to default interest, the BAP held that the bankruptcy court did not clearly err in finding that the plan met § 1129(a)(3)'s good faith requirement.
 
 DISCUSSION
 I. THE APPEAL IS NOT MOOT
 
 16
 The Hornwoods contend that Platinum's appeal is moot because it failed to seek or obtain a stay pending appeal, and the plan has been substantially consummated. Their reliance on In re Roberts Farms, Inc., 652 F.2d 793 (9th Cir.1981), is misplaced. Even if the plan has been substantially consummated, because Platinum's claim is only for monetary damages against solvent debtors, this is not a case in which it would be impossible to fashion effective relief. Nor has there been such a comprehensive change in circumstances as to render it inequitable for the court to consider the merits of the appeal. Id. at 798; see Baker & Drake v. Public Serv. Comm'n (In re Baker and Drake, Inc.), 35 F.3d 1348, 1351 (9th Cir.1994).
 
 
 17
 The Hornwoods' further argument that the appeal is barred by res judicata because the bankruptcy court denied Platinum's motion to dismiss is without merit. There can be no bar in the absence of a final judgment.
 
 
 18
 II. THE BAP CORRECTLY REJECTED A PER SE RULE UNDER § 1129(a)(3)
 
 
 19
 Platinum does not attack the bankruptcy court's § 1129(a)(3) finding of good faith based on the totality of the circumstances.[4] Instead, it contends that lack of good faith was established as a matter of law because, notwithstanding its status as an unimpaired creditor under § 1124(2), the plan, as Platinum puts it, was crafted solely to permit the debtors to take advantage of the Bankruptcy Code to profit personally at the expense of a creditor.[5]
 
 
 20
 Section 1129(a)(3) does not define good faith. In re Madison Hotel Assocs., 749 F.2d 410, 425 (7th Cir.1994). A plan is proposed in good faith where it achieves a result consistent with the objectives and purposes of the Code. Ryan v. Loui (In re Corey), 892 F.2d 829, 835 (9th Cir.1989); see also, Madison Hotel, 749 F.2d at 425 ("[F]or purposes of determining good faith under section 1129(a)(3) ... the important point of inquiry is the plan itself and whether such plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code."). The requisite good faith determination is based on the totality of the circumstances. Stolrow v. Stolrow's, Inc. (In re Stolrow's, Inc.), 84 B.R. 167, 172 (9th Cir.BAP 1988).
 
 
 21
 Platinum contends that a plan lacks good faith when it does not serve the purposes of the Bankruptcy Code. Here, it argues, the plan leaves the Hornwoods solvent while permitting them to avoid paying post-petition interest at the default interest rate. However, insolvency is not a prerequisite to a finding of good faith under § 1129(a). See id. at 171. Moreover, that a creditor's contractual rights are adversely affected does not by itself warrant a bad faith finding. "In enacting the Bankruptcy Code, Congress made a determination that an eligible debtor should have the opportunity to avail itself of a number of Code provisions which adversely alter creditors' contractual and nonbankruptcy rights." In re PPI Enters., Inc., 228 B.R. 339, 344-45 (Bankr. D.Del.1998) (citation omitted). "[T]he fact that a debtor proposes a plan in which it avails itself of an applicable Code provision does not constitute evidence of bad faith." Id. at 347 (citation omitted) (stating that it is not bad faith to take advantage of a particular provision of the Code for the purpose of capping the amount of a creditor's claim).
 
 
 22
 Platinum cites a number of cases in an effort to support its proposed per se rule. In re Chinichian, 784 F.2d 1440 (9th Cir. 1986); In re SGL Carbon Corp., 200 F.3d 154 (3d Cir.1999); In re Walker, 165 B.R. 994 (E.D.Va.1994); In re Kemp, 134 B.R. 413 (Bankr.E.D.Cal. 1991); In re Van Owen Car Wash, Inc., 82 B.R. 671 (Bankr. C.D.Cal.1988); In re Maxim Indus., Inc., 22 B.R. 611 (Bankr.D.Mass.1982). None of those cases adopts or approves a per se rule. Moreover, they are distinguishable because none involved an objection to a plan by an unimpaired creditor.
 
 
 23
 Our decision in Great W. Bank & Trust v. Entz-White Lumber and Supply, Inc. (In re Entz-White Lumber and Supply, Inc.), 850 F.2d 1338 (9th Cir.1988), lays to rest Platinum's argument that a plan intended to nullify the consequences of a default (thereby avoiding the higher post-default interest rate) does not meet the purposes of the Bankruptcy Code. As the court put it, "It is clear that the power to cure under the Bankruptcy Code authorizes a plan to nullify all consequences of default, including avoidance of default penalties such as higher interest." Id. at 1342 (emphasis added). Given the specific power to cure default, it makes no sense to treat a plan invoking that power as lacking good faith. See also, Citybank v. Udhus (In re Udhus), 218 B.R. 513, 516 (9th Cir. BAP 1998).
 
 
 24
 Platinum would have us abandon our long settled interpretation of the good faith requirement, to wit, that "bankruptcy courts should determine a debtor's good faith on a case-by-case basis, taking into account the particular features of each ... plan." Goeb v. Heid (In re Goeb), 675 F.2d 1386, 1390 (9th Cir.1982); see also, Smyrnos v. Padilla (In re Padilla), 213 B.R. 349, 352 n. 2 (9th Cir. BAP 1997) (stating that "the law in the Ninth Circuit is ... that the determination of good faith must be based on the totality of the circumstances...."). As a matter of policy, moreover, Platinum's proposed per se rule would inject unnecessary and undesirable rigidity into the good faith inquiry. See 7 Collier on Bankruptcy, § 1129-34 (Matthew Bender & Co., 15th ed. revised 2002) ("There is considerable danger in attempting to bring any more definition to the requirement [beyond a totality of the circumstances analysis]. Inflexible rules rarely are the hallmark of good faith.").
 
 
 25
 Platinum tacks on a claim of error based on the disparity of interest rates paid to other creditors. While other unsecured creditors were entitled to 10%, Platinum received only its contractual rate of 8.87%. However, as an unimpaired creditor, Platinum has no standing to complain of discrimination because under § 1126(f), it is conclusively presumed to have accepted the plan. 11 U.S.C. §§ 1126(b)(2); 1129(b)(1). See also Great W. Bank & Trust, 850 F.2d at 1342 (explaining that where the debtor pays the arrearage on a naturally matured debt and cures any default, a chapter 11 debtor is entitled to avoid all consequences of the default including default interest).
 
 
 26
 For the reasons stated, the decision of the BAP is affirmed.
 
 
 27
 AFFIRMED.
 
 
 
 Notes:
 
 
 *
 The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 Sanford Hornwood died in 1996; Steven H. Hornwood died in 2000
 
 
 [2]
 11 U.S.C. § 1129(b)(1) provides in relevant part that the court "shall confirm the plan ... if the plan does not discriminate unfairly ... with respect to each class of claims ... that is impaired...."
 11 U.S.C. § 1126(f) provides in relevant part that "a class that is not impaired under a plan ... [is] conclusively presumed to have accepted the plan."
 
 
 [3]
 11 U.S.C. § 1123(a) provides in relevant part that "a plan shall — (5) provide adequate means for the plan's implementation, such as — (G) curing or waiving of any default."
 
 
 [4]
 11 U.S.C. § 1129(a) provides in relevant part:
 "The court shall confirm a plan only if all of the following requirements are met:...
 (3) The plan has been proposed in good faith...."
 None of the other requirements are at issue.
 
 
 [5]
 11 U.S.C. § 1124(2) provides in relevant part that a claim is impaired under a plan unless the plan "cures any such default that occurred before or after the commencement of the case...."