# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-4018

_____

In re: Shawn C. Copeland; Lauren MK Copeland

*Debtor*s

------------------------------

Shawn C. Copeland; Lauren MK Copeland

*Appellant*s

v.

Richard V. Fink

*Appellee*

_____

Appeal from the United States Bankruptcy
Appellate Panel for the Eighth Circuit

_____

Submitted: September 26, 2013
Filed: January 31, 2014

_____

Before WOLLMAN, SMITH, and KELLY, Circuit Judges.

_____

SMITH, Circuit Judge.

In 2011, Shawn Copeland and Lauren MK Copeland, ("the Copelands") filed for Chapter 13 bankruptcy relief. They proposed, and the bankruptcy court rejected, a plan to pay nondischargeable state and federal tax debts before other unsecured creditors. If put in effect, the plan would, in essence, completely pay the Copelands' tax creditors, leaving all other unsecured creditors with little or nothing.

The Copelands argue that the plan did not unfairly discriminate against the unpaid, unsecured creditors, and that tax debts merited special treatment due to the unique and ongoing obligations of the tax creditors. The bankruptcy court rejected the plan. The Bankruptcy Appellate Panel (BAP) found the plan unfairly discriminated against other unsecured creditors and affirmed. For the reasons stated below, we affirm.

## I. *Background*

In April 2011, the Copelands filed for Chapter 13 Bankruptcy relief using a disposable income plan to last for sixty months. In such plans, the debtors pay their disposable income into a plan, supervised by the bankruptcy court, for use in repayment of creditors for the designated period. The fund created by a debtor's payments is called the Disposable Income Pot ("the DIP"). At the time, the Copelands' State and Federal taxes were in arrears. The Copelands' back taxes constitute unsecured, non-priority claims in the bankruptcy case.

The October 2011 version of the Copelands' plan treated their delinquent tax debt as a "Special Class to be paid 100 percent" from the DIP. The plan also provided that their attorney would receive payment for tax return preparation from the DIP. If approved, the plan would have paid their nondischargeable tax debts virtually in full and left nothing for their remaining unsecured creditors with dischargeable debts. The bankruptcy trustee estimated, based on claims filed, that the plan proposed by the debtors would provide a distribution of approximately ninety-seven percent to the tax

creditors, and nothing for the remaining unsecured, non-priority creditors. The bankruptcy court rejected the plan.

In February 2012, the Copelands amended their plan to remove the special-classification provisions. The bankruptcy trustee estimated that this plan would provide a distribution of approximately seventy-eight percent to all unsecured, non-priority creditors. The Copelands then objected to their own plan because it did not provide for prioritized payment of the tax debts. The bankruptcy court overruled their objections but did not enter a confirmation order. In April 2012, the Copelands again amended their plan and renewed their objection to the absence of preferential treatment for the tax creditors. Noting that judges had already ruled on the issue with respect to the October 2011 plan, the bankruptcy court overruled the objection and entered an order confirming the plan. *In re Shawn C. Copeland and Lauren MK Copeland*, No. 11–41875–jwv13 (Bankr. W.D. Mo. May 10, 2012). The BAP affirmed. *In re Copeland*, 483 B.R. 534 (8th Cir. BAP 2012).

## II. *Discussion*

The Copelands appeal, contending (1) that the Bankruptcy court has authority to confirm a Chapter 13 plan which proposes to pay tax creditors in full as a special class, and (2) § 1325(a)(3) does not prohibit payment of tax return preparation fees from the DIP.

## A. *Standard of Review*

The bankruptcy appellate panel noted the standard of review is unclear. *In Re Copeland*, 483 B.R. at 537-38 ("The standard of review on the issue of whether the Debtors' proposed classification discriminated unfairly is not clear."). In *In re Groves*, we treated the issue of classification as "primarily one of statutory construction," but noted that "application of the 'discriminate unfairly' standard in other cases may involve little more than exercise of the bankruptcy court's broad discretion." 39 F.3d

212, 214 (8th Cir. 1994). We need not resolve that issue here, as we would affirm the bankruptcy court under either a de novo or abuse-of-discretion standard.

B. *Plan Discrimination Fairness*

Section 1322(b)(1) of Title 11 permits a Chapter 13 plan to "designate a class or classes of unsecured claims, as provided in section 1122 [of the bankruptcy code]," but the plan "may not discriminate unfairly against any class so designated." Some differential or discriminatory treatment is clearly permitted by § 1322(b)(1); otherwise, the power to classify and the "discriminates unfairly" restriction would be superfluous. *See In re Leser*, 939 F.2d 669, 671–72 (8th Cir. 1991). The Copelands frame the issue as one of the bankruptcy court's authority to confirm a plan that pays tax creditors as a special class. The question, however, is not one principally of court authority so much as it is of the appropriate use of discretion when unfair discrimination results.

We have adopted a four-part test for unfair discrimination. *Leser*, 939 F.2d at 671 (citing *AMFAC Distribution Corp. v. Wolff* (*In re Wolff*), 22 B.R. 510, 512 (9th Cir. BAP 1982); *In re Storberg*, 94 B.R. 144, 146 (Bankr. D. Minn. 1988)). The court asks "(1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination." *Id*. (citing *Wolff*, 22 B.R. at 512; *Storberg*, 94 B.R. at 146). Our review of the Copelands' proposed plan confirms the bankruptcy court's conclusion that the plan is unfairly discriminatory.

The Copelands contend that their plan is not discriminatory because it meets all four prongs of the test. They emphasize the nondischargeable nature of the tax debts, and argue that the nondischargeability of the tax debt indicates a strong public policy in favor of full tax collection. According to the Copelands, this satisfies the "reasonable basis" requirement of the first prong.

-4-

Nondischargeability alone does not justify special classification, as we held in *Groves*. *See* 39 F.3d at 216. The Copelands' reliance on *Leser* is also misplaced. While *Leser* held that the nondischargeability of child-support arrearage reflects a strong public policy in favor of full payment, that public policy does not apply with full force to the Copelands. The Copelands' tax delinquency made the debts nondischargeable. Had they filed pre-petition tax returns on time, the tax debts would largely be dischargeable. *See* 11 U.S.C. §§ 523(a)(1)(B) and 1328(a)(2). Child-support payments are by nature nondischargeable, whereas tax debt becomes nondischargeable only after the debtor fails to file timely returns. *See* 11 U.S.C. §§ 523(a)(1)(B) and 1328(a)(2). The statutory scheme concerning nondischargeability of tax debts reflects an emphasis on timely filing.

The Copelands suggest that the court apply the second, or "no discrimination," prong with caution to avoid the rule being "simplified to the 'Debtor always loses.'" The Copelands suggest that too stringent application of the nondiscrimination requirement means that debtors will find it difficult, if not impossible, to appeal the bankruptcy court's discrimination determination.

The Copelands' argument on this point is neither convincing nor supported with authority, and we thus reject it. *See Watson v. O'Neill*, 365 F.3d 609, 615 (8th Cir. 2004) ("[A]s is our practice—without any arguments or citations to the record that would assist us in judging the merits of [plaintiff's] claim of error—we decline to address it."). Filing a nondiscriminatory plan is not the only vehicle for seeking an appeal. A debtor may, as was the case in *Groves*, simply refuse to file a plan without the special classification. The bankruptcy court would then dismiss the case, which could be appealed. 39 F.3d at 214.

In prior cases, we have given a thorough analysis of this prong, and the confirmation of a nondiscriminatory plan is not dispositive. In *Groves*, we held that nondischargeability did not "dictate full payment of [student loan] debts during the

-5-

life of the plan." 39 F.3d at 215. Rather, "[t]he debtor need only formulate a plan which pays [the nondischargeable debts] pro rata with other unsecured creditors during the life of the plan and as a continuing obligation thereafter." *Id*. The same is true here. Such a plan may interfere with the "fresh start" that bankruptcy provides, but it is hardly remarkable that a nondischargeable debt may remain after a debtor has emerged from bankruptcy; that is precisely what "nondischargeable" means.

Under the third prong, the Copelands state that their good faith is demonstrated by their intention to pay all tax debts, and not merely those that are nondischargeable. According to the Copelands, the government is an involuntary creditor, akin to the child support recipients in *Leser*, and it must continue to provide services to the Copelands regardless of whether it is paid.

We agree with the bankruptcy court that the Copelands' plan lacks good faith. They propose to pay off as much nondischargeable debt as possible, leaving other creditors with nothing at the close of bankruptcy. The Copelands clearly are prioritizing payment to creditors who will be paid in full *regardless* of the plan implemented in bankruptcy, at the expense of creditors with no other recourse. In short, they propose to "protect" those creditors least in need of protection, at the expense of the most vulnerable.

With respect to the fourth prong of the *Wolff* test, the Copelands build on their involuntary-creditor argument. They contend that the discrimination they propose is justified by its societal benefit of funding the government. Unlike the voluntary student-loan creditors in *Groves*, the Copelands argue that the government is an involuntary creditor. Whereas the other creditors "can choose to spend zero additional funds towards [the Copelands'] security, education, and welfare," the government has no such choice.

Having rejected the Copelands' proffered rationale for the discrimination, we see no need to consider whether the degree of discrimination is reasonably related to the rationale.

## C. *Payment of Tax Return Preparation*

Finally, the Copelands argue that their post-petition tax preparation fees should be treated as pre-confirmation legal fees or trustee administration fees, as the bankruptcy could not have proceeded without filing those returns. The Copelands correctly state that the bankruptcy could not go forward without the preparation of tax returns. *See* 11 U.S.C. § 1308. Like the nondischargability of the underlying debt, this is a self-created problem. Had they filed their pre-petition tax returns on time, they presumably would have paid their tax preparer directly at that time.

## III. *Conclusion*

Accordingly, the judgment of the Bankruptcy Court is affirmed.

_____