**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| In re:  CHRISTOPHER JOHN HAMILTON; ELIZABETH LEIGH TESOLIN,<br><br>Debtors,<br><br>------------------------------<br><br>CHRISTOPHER JOHN HAMILTON; ELIZABETH LEIGH TESOLIN,<br><br>Appellants,<br><br>v.<br><br>ELITE OF LOS ANGELES, INC.; SAN DIEGO TESTING SERVICES, INC.,<br><br>Appellees. | No.   18-60043<br><br>BAP No. 17-1273<br><br>MEMORANDUM[*] |

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Lafferty III, Spraker, and Kurtz, Bankruptcy Judges, Presiding

Argued and Submitted February 6, 2020
Pasadena, California

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: BOGGS,[**] IKUTA, and CHRISTEN, Circuit Judges.

Appellants Christopher Hamilton and Elizabeth Tesolin obtained confirmation of their Sixth Amended Chapter 11 Plan of Reorganization over the objection of appellees Elite of Los Angeles, Inc. and San Diego Testing Services, Inc. (Elite). Elite appealed the bankruptcy court's plan confirmation order to the Bankruptcy Appellate Panel, which reversed based on its conclusion that the Plan did not satisfy all statutory confirmation requirements and included an impermissible collection injunction. *See Elite of L.A., Inc. v. Hamilton* (*In re Hamilton*), No. SC-17-1273-LSKu, 2018 WL 3637905 (B.A.P. 9th Cir. July 31, 2018). Hamilton and Tesolin now appeal from the BAP order. We have jurisdiction pursuant to 28 U.S.C. §158(d)(1), review the BAP's decision *de novo,* and apply the same standard of review that the BAP applied to the bankruptcy court's ruling. *In re Molasky*, 843 F.3d 1179, 1183 (9th Cir. 2016). We affirm the BAP's order reversing the bankruptcy court's plan confirmation order.

**1.** The bankruptcy court approved the Plan provision that enjoined creditors from collecting nondischargeable debt during the Plan period, including Elite's

---

[**]     The Honorable Danny J. Boggs, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

2

nondischargeable judgment against Hamilton.[1]  The bankruptcy court relied on two

cases that held a court may exercise its equitable powers pursuant to 11 U.S.C. §

105(a) to approve a Chapter 11 plan that enjoins collection of nondischargeable

debt without running afoul of 11 U.S.C. § 1141(d)(2).  *See Computer Task Group,*

*Inc. v. Brotby* (*In re Brotby*), 303 B.R. 177, 190 (9th Cir. BAP 2003); *In re*

*Mercado*, 124 B.R. 799, 801 (Bankr. C.D. Cal. 1991).

Hamilton similarly relies on *Brotby* and *Mercado* on appeal, but both cases

are distinguishable.  In both, the plans contemplated that nondischargeable claims

would be paid in full.  *See Brotby*, 303 B.R. at 190; *Mercado*, 124 B.R. at 801.

Here, there was no finding or record evidence that Hamilton will be able to pay

Elite's nondischargeable judgment during the Plan term or thereafter.  In fact, it is

undisputed that the nondischargeable debt will significantly increase, to over $3

million, by the end of the Plan period.  We know of no case in which our court (or

---

[1]  After Hamilton left his job at Elite, a jury found Hamilton liable for breach of fiduciary duty, breach of duty of loyalty, intentional interference with prospective economic advantage, trade secret misappropriation, and punitive damages.  *In re Hamilton*, 584 B.R. 310, 315 (B.A.P. 9th Cir. 2018).  Hamilton and Tesolin filed their Chapter 11 petition after the state court entered a large judgment in Elite's favor.  We later affirmed the bankruptcy court's determination that the judgment was nondischargeable under 11 U.S.C. § 523(a)(6) because of Hamilton's willful and malicious conduct.  *See In re Hamilton*, 785 F. App'x 438, 439 (9th Cir. 2019).

the BAP) has approved a collection injunction in such circumstances.[2] Hamilton and Tesolin also suggest the collection injunction is severable from the Plan, but the bankruptcy court determined that its inclusion was necessary for the Plan's success.

**2.** Section 1129(a)(11) requires a finding by the bankruptcy court that plan confirmation "is not likely to be followed by liquidation, or the need for further financial reorganization, of the debtor." 11 U.S.C. § 1129(a)(11). To satisfy this section, known as the "feasibility requirement," the debtor must demonstrate that the plan "has a reasonable probability of success." *First Southern Nat'l Bank v. Sunnyslope Hous. Ltd. P'ship* (*In re Sunnyslope Hous. Ltd. P'ship*), 859 F.3d 637, 646–47 (9th Cir. 2017) (en banc) (quoting *In re Acequia, Inc.*, 787 F.2d 1352, 1364 (9th Cir. 1986)). "A bankruptcy court's finding of feasibility is reviewed for abuse of discretion." *Id.* at 647.

The record does not support the bankruptcy court's finding that the Plan was not likely to be followed by liquidation or further financial reorganization. Because of the accruing interest on Elite's nondischargeable judgment, Hamilton

---

[2] The dissent relies on *Copeland v. Fink* (*In re Copeland*), 742 F.3d 811 (8th Cir. 2014). But in that case, the Eighth Circuit assumed that the nondischargeable debt would be "paid in full *regardless* of the plan implemented in bankruptcy." *Id.* at 815 (emphasis in original).

will owe more to Elite at the end of the Plan period than at the beginning, and his work life expectancy will be five years shorter. The bankruptcy court's summary finding that Hamilton and Tesolin will be able to make the required payments under the Plan does not alone sustain a feasibility finding, and that court did not address whether they will need to seek liquidation or further reorganization at the end of the Plan period. Accordingly, we conclude that the bankruptcy court abused its discretion by determining that the Plan was feasible within the meaning of § 1129(a)(11).

**3.** Elite argues that Hamilton has improperly used Chapter 11 to delay enforcement of its nondischargeable judgment while he runs Hamilton College Consulting (HCC), a competitor business owned by his mother. Hamilton receives an annual salary of $199,000 and has incurred professional fees in excess of $2 million, which HCC has agreed to pay.

Section 1129(a)(3) requires that a plan be "proposed in good faith and not by any means forbidden by law" in order to be confirmed. 11 U.S.C. § 1129(a)(3). A plan is proposed in good faith if it achieves a result consistent with the purposes of the Bankruptcy Code. *Platinum Capital, Inc. v. Sylmar Plaza, L.P.* (*In re Sylmar Plaza, L.P.*), 314 F.3d 1070, 1074 (9th Cir. 2002). The primary purposes of Chapter 11 are to rehabilitate the debtor and maximize the value of the estate.

*Sunnyslope*, 859 F.3d at 645. The good-faith determination is based on the totality of the circumstances. *Sylmar Plaza*, 314 F.3d at 1074. The proposed Plan fails to meet these objectives. It is not feasible, it appears likely that Hamilton will be unable to pay the ballooning nondischargeable debt at the end of the Plan period, there are unresolved issues concerning Hamilton's degree of control over HCC, and there is no evidence that Hamilton made a demand for indemnification from HCC to pay Elite's judgment.[3] Accordingly, we conclude that the bankruptcy court clearly erred by finding that the Plan was proposed in good faith, as required by § 1129(a)(3).

**4.** A bankruptcy court may confirm a Chapter 11 plan over the objections of an impaired creditor if the plan is "fair and equitable" to each creditor class pursuant to 11 U.S.C. § 1129(b)(1). *Zachary v. California Bank & Tr.*, 811 F.3d 1191, 1194 (9th Cir. 2016). To be fair and equitable, the plan must satisfy either the "absolute priority rule," codified at § 1129(b)(2)(B)(ii), *see Zachary*, 811 F.3d at 1193–94, or an exception to the rule known as the "new value corollary," *Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. Pshp. (In re Ambanc La Mesa Ltd. P'ship)*, 115 F.3d 650, 654 (9th Cir. 1997). To satisfy the new value corollary, the debtor must offer new value under the Plan. *Id*. Here, because the Plan provided that

---

[3] *See* Cal. Civ. Code § 2778(1).

Hamilton and Tesolin would retain any nonexempt and unencumbered equity in a rental property they own, the bankruptcy court required that the Plan satisfy the new value corollary. Hamilton responded by securing a commitment from HCC to contribute, on the Plan's effective date, $200,000 in cash for administrative expenses and a $380,000 promissory note to cover the balance of professional fees. The bankruptcy court found that HCC's pledged contribution provided new value and met the other criteria for the new value corollary.

Because HCC was already paying Hamilton's and Tesolin's professional fees pursuant to an indemnity agreement with Hamilton at the time HCC secured the effective date contribution, we conclude that the bankruptcy court erred by finding that HCC's contribution was new.

The BAP's order reversing the bankruptcy court's plan confirmation order is **AFFIRMED**.

*Hamilton v. Elite of Los Angeles, Inc.*, 18-60043

IKUTA, Circuit Judge, dissenting:

Christopher Hamilton and Elizabeth Tesolin (referred to here collectively as Hamilton) owe Elite of Los Angeles, Inc. and San Diego Testing Services, Inc. (Elite) over $2 million. The bankruptcy court confirmed a plan under which all unsecured creditors, including Elite, would receive a pro rata share of their debt over a five-year period. At the end of the plan term, a large portion of Elite's debt would remain. Because Elite's debt is nondischargeable, Hamilton will have to continue to pay it, likely for the rest of his life. The majority reverses the bankruptcy court's determination based solely on its own assessment of the equities. Because the Code bars Elite from pursuing collection efforts until the end of the plan, the bankruptcy court did not abuse its discretion in approving the plan's collection injunction against Elite. Moreover, the bankruptcy court did not clearly err in determining that the plan is feasible and was proposed in good faith. Because I would affirm the bankruptcy court, I dissent.[1]

---

[1] We review the bankruptcy court's rulings independently, *In re Salazar*, 430 F.3d 992, 994 (9th Cir. 2005), and give no deference to the decision of the Bankruptcy Appellate Panel, *In re Kadjevich*, 220 F.3d 1016, 1019 (9th Cir. 2000). We review the bankruptcy court's conclusions of law de novo, *In re Salazar*, 430 F.3d at 994, its factual findings for clear error, *Id.*, and its confirmation of a reorganization plan for abuse of discretion, *In re Marshall*, 721 F.3d 1032, 1045 (9th Cir. 2013).

The bankruptcy court did not abuse its discretion in approving the plan's collection injunction, which precludes Elite from collecting its nondischargeable debt during the life of the plan, because the Code itself precludes Elite from doing so.

Under § 362 of the Code, the filing of a petition under Chapter 11 "operates as a stay, applicable to all entities, of . . . the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title."  11 U.S.C. § 362(a)(2).  This automatic stay "continues until . . . the time a discharge is granted or denied."  § 362(c)(2)(C).  By default, "the confirmation of a plan . . . discharges the debtor from any debt that arose before the date of such confirmation" and is dischargeable.  § 1141(d)(1)(A).

Individual debtors are governed by a different provision.  In 2005, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA), which amended § 1141 to include the following provision:  "In a case in which the debtor is an individual . . . confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan."  Pub. L. No. 109–8, 119 Stat. 23 (2005) (codified at 11 U.S.C. § 1141(d)(5)(A).  In sum, when an individual debtor files a petition

under Chapter 11, the automatic stay under § 362(a) continues until "the court grants a discharge on completion of all payments under the plan." § 1141(d)(5)(A). Put differently, the stay continues until the plan ends. Because Hamilton is an individual, § 362 bars Elite from enforcing the pre-petition judgment against him until the "completion of all payments under the plan." § 1141(d)(5)(A).

No court has yet addressed how the BAPCPA changed the duration of the automatic stay for individual debtors. So Hamilton included a provision in the plan that would prevent Elite from enforcing the pre-petition judgment during the plan period. This so-called collection injunction is functionally equivalent to the Code's automatic stay, as amended by the BAPCPA.

The majority disapproves of the collection injunction because "there was no finding or record evidence that Hamilton will be able to pay Elite's nondischargeable judgment during the Plan term or thereafter." Maj. Op. at 3. But the Code does not require full payment of nondischargeable debt during the life of a plan. Instead, a "debtor need only formulate a plan which pays the nondischargeable debts pro rata with other unsecured creditors during the life of the plan." *In re Copeland*, 742 F.3d 811, 814 (8th Cir. 2014) (alterations and citation omitted). Indeed, "it is hardly remarkable that a nondischargeable debt

3

may remain after a debtor has emerged from bankruptcy; that is precisely what 'nondischargeable' means."[2] *Id.*

Given the BAPCPA, the collection injunction is unnecessary. But because the collection injunction does the work of the Code's automatic stay, and nothing more, the bankruptcy court did not abuse its discretion in approving it.

## II

Nor did the bankruptcy court clearly err in concluding that the plan was feasible. As the Code explains the feasibility requirement, a "court shall confirm a plan only if . . . [c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). The feasibility analysis is focused on the debtor's ability to fulfill its obligations *under the plan*. *See, e.g.*, *In re Loop*

---

[2] The majority attempts to distinguish *Copeland* on the ground that the Eighth Circuit assumed that the nondischargeable debt would be "paid in full *regardless* of the plan implemented in bankruptcy." Maj. Op. at 4 n.2. But the Eighth Circuit does not explain its basis for this assumption; it could have reasonably concluded that the holders of nondischargeable debt would be paid in full regardless of the plan because the debt was nondischargeable, just as in this case. More significant, *Copeland* refused to allow the debtors to prioritize payment of nondischargeable debt over payment to unsecured creditors, the approach the bankruptcy court approved—and the majority disapproves—in this case. *See In re Copeland*, 742 F.3d at 814–15.

*76, LLC* 465 B.R. 525, 544 (B.A.P. 9th Cir. 2012). Though it is not entirely clear what "liquidation or reorganization" means as applied to individual debtors, it is generally agreed that a debtor must demonstrate that *the plan* has a "reasonable probability of success." *In re Acequia, Inc.*, 787 F.2d 1352, 1364 (9th Cir. 1986).

Here, the bankruptcy court determined that Hamilton could make the payments under the confirmed plan. Neither Elite nor the majority disagree. Nevertheless, the majority holds that the bankruptcy court abused its discretion because Hamilton "will owe more to Elite at the end of the Plan period than at the beginning" and the court "did not address whether [Hamilton] will need to seek liquidation or further reorganization at the end of the Plan period." Maj. Op. at 5. This ruling is erroneous, because feasibility does not hinge on whether a debtor will be able to make certain payments *after* the plan has ended. Instead, feasibility turns on the debtor's ability to live up to the terms of the plan. *See In re Loop 76, LLC*, 465 B.R. at 544.

There is no dispute that Elite's nondischargeable debt will grow during the plan period due to the accrual of interest. But under the Code, that fact has no bearing on feasibility. The district court did not clearly err.

III

Finally, the bankruptcy court did not clearly err in concluding that the plan

5

was proposed in good faith. *See* 11 U.S.C. § 1129(a)(3) (providing that a reorganization plan must have been "proposed in good faith and not by any means forbidden by law"). The good faith determination is based on the totality of the circumstances, and the requirement is satisfied when the plan "achieves a result consistent with the objectives and purposes of the Code." *In re Sylmar Plaza, L.P.*, 314 F.3d 1070, 1074 (9th Cir. 2002). "While the protection of creditors' interests is an important purpose under Chapter 11, the Supreme Court has made clear that successful debtor reorganization and maximization of the value of the estate are the primary purposes." *In re Sunnyslope Hous. Ltd. P'ship*, 859 F.3d 637, 645 (9th Cir. 2017) (en banc) (alteration omitted) (quoting *In re Bonner Mall P'ship*, 2 F.3d 899, 916 (9th Cir. 1993), *abrogated on other grounds by Bullard v. Blue Hills Bank*, 575 U.S. 496 (2015)). The mere fact "that a debtor proposes a plan in which it avails itself of an applicable Code provision does not constitute evidence of bad faith." *In re Sylmar Plaza*, 314 F.3d at 1075 (alteration and citation omitted). There must be more.

There is no evidence that Hamilton submitted the plan in bad faith. Nothing in the Code or our precedent suggests that a debtor proposes a plan in bad faith merely because the debtor will only partially pay an unsecured creditor's nondischargeable debt during the life of a plan, and the debt will increase due to

6

the accrual of interest. Here, under the confirmed plan, Hamilton will be free of all dischargeable debt in five years, and from that point on will be able to allocate available funds to paying off Elite's debt. The bankruptcy court determined that this strategy was an efficient and legitimate way to resolve the outstanding debt of Hamilton's creditors. This factual determination is not clearly erroneous.[3]

***

The majority implies that Hamilton is a bad actor, and therefore was not entitled to have his plan confirmed. The majority notes that in Elite's state court action against Hamilton, the jury awarded Elite punitive damages, and that in bankruptcy proceedings, Elite's state award was deemed nondischargeable due to "Hamilton's willful and malicious conduct." The majority also seems to accept Elite's argument that Hamilton improperly used Chapter 11 to delay payment "while he runs Hamilton College Consulting (HCC), a competitor business." Maj. Op. at 3 n.1, 5.

Debtors who failed to cure their debts would face harsh punishment in

---

[3] I would remand with respect to the bankruptcy court's determination that the plan satisfied the new value corollary rule. Although Hamilton previously informed the bankruptcy court that he would retain "at least $66,000 in equity in the Pasadena Property," it is unclear what the projected value of the Pasadena Property will be in five years. Therefore, we cannot determine whether the $200,000 contribution is "reasonably equivalent" to Hamilton's retained equity interest. *In re Ambanc La Mesa Ltd. P'ship*, 115 F.3d 650, 654 (9th Cir. 1997).

earlier times. If this were ancient Rome, a debtor could be cut into pieces and distributed among the creditors. *See* 2 W. Blackstone, Commentaries on the Laws of England 472 (1766). Were this 13th century England, a debtor could be imprisoned. *Sturges v. Crowninshield*, 17 U.S. 122, 140–41 (1819). But today in our country, all debtors may avail themselves of the Bankruptcy Code, bad actors included. While Elite's nondischargeable debt is sizeable, the Code provides relief even for debtors who carry a near insurmountable amount of debt. I dissent.