311 B.R. 250 (2004)
In re GOTCHA INTERNATIONAL L.P., A Delaware Limited Partnership; Debtor.
Ederel Sport, Inc.; Snowmass Apparel, Inc.; Appellants,
v.
Gotcha International L.P., A Delaware Limited Partnership; Appellee.
BAP No. CC-03-1366-BMaJ. Bankruptcy No. SA 02-216591-RA.
United States Bankruptcy Appellate Panel of the Ninth Circuit.
Argued and Submitted on March 18, 2004.
Filed June 14, 2004.
*251 Mike Neue, Newport Beach, CA, for Ederal Sport, Inc.
Evan D. Smiley, Albert, Weiland & Golden LLP, Costa Mesa, CA, for Gotcha International L.P.
Before BRANDT, MARLAR and JAROSLOVSKY,[1] Bankruptcy Judges.

OPINION
BRANDT, Bankruptcy Judge.
Debtor's proposed chapter 11[2] plan classified the combined unsecured claim of appellants Ederel Sport, Inc. and Snowmass Apparel, Inc. (jointly, "Ederel") separately from other unsecured claims. The bankruptcy court confirmed the plan over Ederel's classification objection.
Ederel timely appealed the confirmation order, seeking reversal of confirmation and a limited remand, but did not seek a stay pending appeal. Debtor filed two motions to dismiss for mootness based on intervening circumstances, the second after it had borrowed substantial funds to consummate the plan, in connection with which other claimants had transferred and granted security interests in their claims. That motion was heard with the merits at oral argument.
We GRANT the motion and dismiss the appeal.

I. FACTS
Gotcha International, L.P. ("Gotcha" or "debtor") is a Delaware limited partnership operating in California which owns and licenses various apparel-related trademarks. *252 Marvin and Sherri Winkler ("Winklers") directly or indirectly own most of the equity in Gotcha.
In 1999, Gotcha entered into an agreement to license its trademarks to Ederel Sport, Inc. in exchange for a royalty and advertising contribution. Snowmass Apparel, Inc. is Ederel Sport Inc.'s guarantor under the license agreement. In late 2001, Ederel sued Gotcha in California Superior Court alleging breach of contract, statutory violations, and various business related tort claims (the "State Court Action"). Gotcha counterclaimed for breach of contract, and sought setoff and recoupment.
On 23 August 2002, Gotcha filed a chapter 11 petition. In December 2002, Ederel filed a claim in an unliquidated amount, asserting that its damages would be liquidated by the resolution of the State Court Action, but later estimated its claim at $33 million. Arguing that Ederel's claim was not "substantially similar" to other general unsecured claims because it was unliquidated, subject to the State Court Action, and to setoff or recoupment, contingent, partially insured, and based on tort and breach of contract, Gotcha filed a motion[3] proposing to classify general unsecured claims:

Class 5 Claims: Claims of $2,000 or more,
General including the $600,000 claim of law
Unsecured firm of Dewey Ballantine, LLP
Claims ("Dewey") total claims of approximately
 $1.6 million
 Treatment: to be paid over 48-57
 months
Class 6 Claims: Combined insider unse-Winklers
 cured claims of approximately $9
 million
 Treatment: reduced to $3 million,
 to be paid over a 60-month term
 at 6% interest
Class 7 Claims: Unsecured claim of ap-Ederel
 proximately $33 million; allowed
 amount not yet determined; debtor
 asserts set-off and recoupment
 rights and application of insurance
 coverage
 Treatment: Up to $33 million; to
 be paid over 183-month term at
 8.25% interest; fixed monthly payments
 deposited into a reserve account
 and distributed on final determination
 of its claim.

Ederel responded that its claim should be classified with other unsecured claims because there were no distinct legal and/or economic justifications for separate classification. The bankruptcy court, finding that the "classification is appropriate and permissible under the Code for the reasons urged by the debtor" (Transcript, 12 December 2002 at 28:12-14), granted the motion by order entered 30 December 2002 (the "Classification Order").
On 25 June 2003, Gotcha filed its Fourth Amended Chapter 11 Plan of Reorganization (the "Plan"), proposing to pay most claims in full with interest, funded primarily by its future operations. Incorporating the scheme of the Classification Order, the Plan provided for: class 1, the secured claim of CIT Group/Commercial Services, Inc. ("CIT"), $1.7 million;[4] classes 2 and 3, two other secured claims of $1.3 million and $180,000 respectively; class 4, priority unsecured wage claims of $5000; general unsecured claims in classes 5, 5a,[5] 6, and 7, and class 8, the limited partners' equity interests.
The parties stipulated (for the Plan feasibility determination only) that Ederel's *253 estimated class 7 claim was $1.3 million. After a contested hearing, the bankruptcy court overruled Ederel's objections, finding in part that the Plan properly classified claims and interests; that all other classes voted to accept the Plan and, that the "Plan does not unfairly discriminate [with respect to Ederel] and is fair and equitable." Findings of Fact and Conclusions of Law, 3 July 2003. The same day the court entered an order confirming the Plan (the "Confirmation Order") which became effective ten days later.

Appeal and First Motion to Dismiss Appeal.
Ederel timely appealed the Confirmation Order and interlocutory orders predicate to the Confirmation Order, but did not seek a stay pending appeal. In September 2003, Gotcha moved to dismiss this appeal as moot based on the Plan's substantial consummation; Ederel opposed. Our motions panel denied the motion, but limited relief on appeal to that proposed in Ederel's response to the motion: those parties who had been paid under the Plan would keep those payments, the Ederel reserve account would be paid "catch-up" payments while payments to all others are deferred, and finally, all unsecured creditors would be paid at the same rate until paid in full.

Second Motion to Dismiss Appeal.
On 4 March 2004, Gotcha filed a second motion to dismiss for mootness, based on developments occurring after its first motion: on 31 October 2003, Gotcha had obtained the bankruptcy court's approval to borrow $6 million from CIT to facilitate consummation of the Plan, which it did. The bankruptcy court's order directed Gotcha to apply the loan proceeds to pay off secured claims in classes 1, 2 and 3, and to make the pro rata distributions to the other classes.[6] As security, Gotcha granted CIT a first-priority lien on all its assets.
On 13 November 2003, Dewey, the holder of a $600,000 allowed class 5 claim, assigned to Winklers its pro rata share of the distribution from the CIT loan proceeds in excess of $400,000, and Winklers assigned to Dewey a portion of their right to receive Class 6 payments going forward. Winklers also guaranteed the CIT loan and granted CIT a security interest in the balance of their allowed class 6 claim.

II. JURISDICTION
The bankruptcy court had jurisdiction via 28 U.S.C. § 1334 and § 157(b)(1) and (2)(L), and we do under 28 U.S.C. § 158(c).

III. ISSUE
Whether the appeal is moot.

IV. DISCUSSION
Gotcha argues: first, that the appeal is constitutionally moot because, without a stay pending appeal, the Plan has been substantially consummated and it is impractical or impossible to grant Ederel the relief it seeks; and second, that the appeal is equitably moot because the rights of non-parties have intervened.

1. Constitutional Mootness

An appeal is moot if it is impossible to fashion effective relief, Church of Scientology of California v. United States, 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992); In re Sylmar Plaza, L.P., 314 *254 F.3d 1070, 1074 (9th Cir.2002) cert, denied, 538 U.S. 1035, 123 S.Ct. 2097, 155 L.Ed.2d 1065 (2003). The party asserting mootness has a heavy burden to establish that there is no effective relief that the court can grant. In re Pintlar Corp., 124 F.3d 1310, 1312 (9th Cir.1997).
As we said in In re Weinstein:
Mootness is a judicial doctrine with the general rule that the occurrence of events which prevents an appellate court from granting effective relief renders an appeal moot. An appeal is dismissed as moot if a stay of an order confirming a plan is not obtained and the plan of reorganization is substantially consummated so that effective relief is no longer available.
....
Whether a reorganization plan is substantially consummated turns on the facts of each case. Once a reorganization plan is substantially consummated, there is often a comprehensive change in circumstances so as to render it impractical for the appellate court to review the merits of the plan. However, the fact that a plan is substantially consummated and that the appellant failed to obtain a stay pending appeal does not, by itself, render an appeal moot. The appellate court should still consider whether it can grant effective relief. If the court can fashion relief by simply ordering additional disbursements of money by one of the parties on appeal, the appeal is not moot.
227 B.R. 284, 289 (9th Cir. BAP 1998), citing In re Baker & Drake, Inc., 35 F.3d 1348, 1351 (9th Cir.1994) (other citations and footnotes omitted; Baker & Drake uses "substantial culmination" rather than "substantial consummation").
The Code defines "substantial consummation" as existing if all or substantially all of the property proposed by the plan to be transferred has been transferred, the debtor or successor has assumed the business or the management of all or substantially all of the property dealt with by the plan, and distribution has commenced under the plan. § 1101(2).
All of those have occurred here, and although we are highly skeptical, it might not be impossible to grant the relief Ederel now requests without reversing or vacating the Confirmation Order. Rule 8013 permits us to "affirm, modify, or reverse a bankruptcy judge's judgment ...." (emphasis added). The rule implements 28 U.S.C. § 2106, which provides that "[t]he Supreme Court or any other court of appellate jurisdiction may ... modify ... any judgment, decree, or order of a court lawfully brought before it for review, ... as may be just under the circumstances." 28 U.S.C. § 2106. The relief Ederel now seeks conceivably could come within the Weinstein ambit, although it would stretch out payments to Winklers (and thus to CIT and Dewey Ballentine), and they are not parties to this appeal.
Because we conclude below this appeal is equitably moot, we need not, and do not, now decide whether modification could save it from constitutional mootness.

2. Equitable Mootness

A comprehensive change of circumstances may make it inequitable to consider the merits of the appeal and prevents us from fashioning effective relief. In re Beatty, 162 B.R. 853, 856 (9th Cir. BAP 1994).
In In re Dynamic Brokers, Inc., 293 B.R. 489, 494 (9th Cir. BAP 2003), the secured creditor sold its claim to a third party and the claims assignee, not a party to the appeal, relied on the stream of payments under the plan. The appellant sought payment of an increased claim *255 amount which could be made by a reduction in payments to other creditors. Because nothing in the record there showed that third parties would be "unreasonably adversely affected" by the relief sought on appeal, we declined to dismiss for equitable mootness. See also In re Tucson Self-Storage, Inc., 166 B.R. 892, 896 (9th Cir. BAP 1994) (appeal not moot if future payments may be adjusted prospectively to provide the amount determined on appeal).
Ederel now seeks reversal and a limited remand to modify the Plan to pay classes 6 and 7 at the same rate, and proposes to delay future payments to class 6 until both classes are paid at the same proportional rate. In response to the second dismissal motion, it suggests increasing the Plan interest rate payable on the class 6 claim from 6% to 8%, the rate the bankruptcy court previously determined Ederel should receive as compensation for up to a 15year term.[7]
Ederel argues, without citing authority, that a third party claim assignee is not entitled to rely on the finality of plan confirmation once it has notice of an appeal of the confirmation. Essentially, it asks us to treat its notice of appeal as a lis pendens. We disagree: it is appellant's burden to seek a stay if post-appeal transactions could render the appeal moot. In re Filtercorp., Inc., 163 F.3d 570, 576-577 (9th Cir.1998).
As noted above, Dewey now holds part of Winkler's class 6 claim, and CIT has a security interest in the remainder. The uncontested evidence (submitted in connection with the second dismissal motion) is that Dewey "relied on the finality of the Plan Confirmation Order, especially the classification and treatment provided to classes 5, 6 and 7 under the Plan, and the payment stream proposed in the Plan for the class 6 claims." Declaration of Lisa Hill Fenning, 4 March 2004.
Delaying future payments to class 6 until the reserve for payments to class 7 has caught up unquestionably would affect Winklers, Dewey, and CIT. We do not see how it can seriously be argued that changing the term of a $33 million obligation from 5 to possibly 17 years, with the precise determination of that duration dependent on the outcome of a future trial and subject to possible state appeal before it becomes final under state law, Cal.Civ. Proc.Code § 1049; Campanelli v. Allstate Life Ins. Co., 322 F.3d 1086, 1095 (9th Cir.2003), is not an unreasonable adverse effect on the non-parties holding and secured by that obligation. And Ederel has not even made the argument: rather it argues that CIT, Dewey, and the Winklers knew of the appeal but chose to proceed anyway, and secondly, that "it's only money." Neither avails. Filtercorp disposes of the first, and Dynamic Brokers and Tucson Self-Storage are distinguishable: those appeals were not moot because the payments constituted only a small portion of the plan's payments, and caused only minimal impact on third-parties not party to the appeals. And in those cases, unlike here, were appellant successful, future payments could be easily adjusted.
In this appeal, Gotcha refinanced (which it could do because there was no stay and the Plan so provided) and distributed payments under the Plan to all but two classes. Substantial amounts are at stake, and if Ederel's claim is ultimately anywhere close to the stipulated estimate for plan confirmation, a majority of the remaining *256 plan disbursements are dramatically affected.

V. CONCLUSION
Because we cannot grant the relief still available to appellant without unreasonably adversely affecting non-parties, this appeal is equitably moot, and the second motion to dismiss will be GRANTED.
JAROSLOVSKY, Bankruptcy Judge, concurring.
I concur with my brethren that this appeal is equitably moot. I write separately only to express my reservations about their observation that it might be possible to grant relief without reversing or vacating the confirmation order.
While 28 U.S.C. § 2106 does permit an appellate court to modify a judgment or order, I do not believe that power is unfettered. It is one thing to modify the rate of interest on a money judgment and quite another to create a different plan of reorganization in a Chapter 11 case.
In this case, the relief Ederal seeks is nothing less than modification of a confirmed plan. If we were to grant relief, we would be imposing upon all parties a new plan without soliciting their votes. No court would have made the findings mandated by § 1129(a) as to the new plan. We would be ignoring § 1127(b), which limits the power of post-confirmation modification to the plan proponent or reorganized debtor, prohibits modification after substantial consummation, and requires notice and a hearing on the modified plan.
I conclude that the general power granted by 28 U.S.C § 2106 to modify a judgment or order does not trump the specific provisions of Title 11 dealing with Chapter 11 plan modification. I accordingly believe that, in addition to being equitably moot, this appeal is moot because we have not the power to grant the relief sought.
NOTES
[1] Hon. Alan Jaroslovsky, Bankruptcy Judge for the Northern District of California, sitting by designation.
[2] Absent contrary indication, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330; all "Rule" references are to the Federal Rules of Bankruptcy Procedure.
[3] Rule 3013 provides: "For the purposes of the plan and its acceptance, the court may, on motion after hearing on notice as the court may direct, determine classes of creditors and equity security holders
[4] All figures are approximation
[5] The Plan added class 5a as a convenience class of unsecured claims less than $2,000, to be paid 60% of the claim amounts within 30 days of the effective date.s.
[6] The Plan, Section 11(D)(1), contemplated a possible refinance:

In the event that the Debtor refinances the secured debt in this case, and receives funds in excess of the amount necessary to pay-off the secured creditors, the funds received in excess of the Allowed Secured Claims will be shared on a pro-rata basis by Classes 5, 6 and 7.
[7] The Confirmation Order, Finding "E," allows interest on Ederel's claim at 8.25%; Ederel has not explained the different rate it proposed. In view of our conclusion, we need not address any possible implications.