**NOT FOR PUBLICATION**

### UNITED STATES BANKRUPTCY APPELLATE PANEL
### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>iE, INC.,<br><br>　　　　　　　Debtor. | BAP No. CC-19-1307-FLTa<br>BAP No. CC-19-1343-FLTa<br>(Related) |
| GARRETT WILLIAMS,<br>　　　　　　　Appellant,<br>v.<br>iE, INC.,<br>　　　　　　　Appellee. | Bk. No. 9:18-bk-11181-DS<br><br>**MEMORANDUM**<sup>*</sup> |

Appeal from the United States Bankruptcy Court
for the Central District of California
Deborah J. Saltzman, Bankruptcy Judge, Presiding

Before: FARIS, LAFFERTY, and TAYLOR, Bankruptcy Judges.

### INTRODUCTION

Garrett Williams sued his former employer, iE, Inc., for wrongful

termination. iE then sought chapter 11[1] relief. Unfortunately for

Mr. Williams, his counsel filed his proof of claim more than six months late.

---

<sup>*</sup> This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

In the meantime, iE proposed a disclosure statement and chapter 11 plan that paid 100% of non-insider general unsecured claims. Mr. Williams objected to plan confirmation.

The bankruptcy court disallowed Mr. Williams' late-filed claim, finding that his tardiness was not the product of excusable neglect. Mr. Williams filed a motion for reconsideration in which he offered to subordinate his claim, but the court denied his motion. The court also overruled his objection to plan confirmation.

The bankruptcy court did not err in disallowing Mr. Williams' proof of claim as untimely and confirming iE's chapter 11 plan. We AFFIRM.

## FACTUAL BACKGROUND

### A. The state court action

iE is a "permit expediting company" that offers services to contractors, including testing of and permitting for heating, ventilation, and air conditioning ("HVAC") units and systems. Ian Jacoby is iE's sole shareholder and president.

Mr. Williams worked for iE testing HVAC systems and assigning a rating under the state's energy rating system. He claims that he discovered that someone (he suspected Mr. Jacoby) was changing some of his ratings in order to pass HVAC systems that had failed his inspection. Mr. Williams claims that he was fired shortly after he voiced his concerns.

Mr. Williams filed a state court complaint against iE, Mr. Jacoby, and

others, alleging wrongful termination, breach of contract, wage violations, and other causes of action (the "State Court Action"). After the parties engaged in fruitless settlement negotiations, iE chose to deal with Mr. Williams' claims through the bankruptcy process.

## B.    iE's chapter 11 bankruptcy case

iE filed its chapter 11 petition and scheduled Mr. Williams as an unsecured creditor with a contingent, unliquidated, and disputed claim of an unknown amount.[2] It included Mr. Williams on its notice list.

The bankruptcy court set the claims bar date for November 15, 2018. Mr. Williams and his state court counsel received notice of the deadline but did not timely file a proof of claim.

On May 6, 2019, iE filed its proposed disclosure statement and chapter 11 plan. The plan identified unsecured debt totaling $589,361.10 and proposed paying ten percent of the allowed unsecured claims over sixty months. Mr. Jacoby and his sister held the bulk of the unsecured claims ($410,000). The disclosure statement acknowledged that iE had filed for bankruptcy protection due to the State Court Action but noted that Mr. Williams had not filed a proof of claim, so he would not receive any

---

[2] A few weeks later, Mr. Jacoby filed a chapter 7 petition and scheduled Mr. Williams as an unsecured creditor in the amount of $2 million. Mr. Williams timely filed a proof of claim and an adversary complaint in Mr. Jacoby's case, asserting that his debt was excepted from discharge under § 523(a)(6). Mr. Jacoby otherwise received his discharge, and the adversary proceeding is stayed pending resolution of this appeal.

distribution as an unsecured creditor. The court scheduled a hearing on approval of the disclosure statement.

At this point, Mr. Williams' bankruptcy counsel, Lazaro E. Fernandez, realized that he had not filed a proof of claim for Mr. Williams. On May 23, 2019, which was over six months after the claims bar date, Mr. Williams filed his proof of claim ("Claim") for $600,000 based on the claims asserted in the State Court Action. He neglected to file a motion requesting that the court accept the late Claim.

Shortly thereafter, on June 14, iE filed its first amended plan and disclosure statement. Neither included the Claim. The plan proposed to pay non-insider general unsecured creditors $2,989.35 per month for sixty months, which would be sufficient to pay those claims (totaling $179,361.10) in full with postpetition interest. It further provided that insider claims would not be paid until after non-insider general unsecured creditors are paid in full.

## C.    iE's objection to the Claim

A few days later, iE objected to the Claim as untimely ("Claim Objection").

Mr. Williams argued in response that the Claim should be allowed because the late filing was the result of excusable neglect under *Pioneer Investment Services, Inc. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993).

First, he argued that iE would not be prejudiced by the late-filed Claim because iE had long known of the State Court Action and could easily modify the plan to account for the $600,000 Claim.

Second, he argued that the delay would not harm the chapter 11 proceedings and actually benefitted iE, because Mr. Jacoby had been able to focus on his personal chapter 7 case without worrying about litigating the Claim in iE's chapter 11 case.

Third, Mr. Williams explained that, although Mr. Fernandez had received notice of the claims bar date from Mr. Williams' state court counsel, a temporary legal assistant inadvertently failed to calendar the claims bar date.

Fourth, Mr. Williams asserted that he and Mr. Fernandez acted in good faith.

At the hearing on the Claim Objection and approval of the first amended disclosure statement, Mr. Williams stated for the first time that he was willing to subordinate the Claim to the claims of other general unsecured creditors.

The bankruptcy court disallowed the Claim in its entirety. It discussed the *Pioneer* factors and found that the first three factors weighed heavily against excusable neglect. It ruled that (1) there was danger of prejudice against iE and the unsecured creditors; (2) the length of delay was significant and would delay approval of the disclosure statement and

5

plan confirmation; and (3) the reason for delay was not compelling or an instance of excusable neglect. It did not find evidence of bad faith, but this conclusion did not outweigh the other factors. It further rejected Mr. Williams' suggestion of a subordinated claim as inappropriate in a chapter 11 case. The court entered an order sustaining iE's Claim Objection ("Claim Objection Order").

The bankruptcy court also approved the first amended disclosure statement.[3]

## D.    Motion for reconsideration

Mr. Williams filed a timely motion for reconsideration of the Claim Objection Order ("Motion for Reconsideration"). He again argued that there was excusable neglect to permit the late filing of the Claim. He requested that the court allow the Claim for $600,000 as timely filed or, in the alternative, allow the Claim on a subordinated basis.

## E.    Objection to confirmation

Meanwhile, Mr. Williams filed an objection to confirmation of the plan ("Confirmation Objection"). He contended that the plan misclassified the Claim as Class 23 by segregating it from other general unsecured claims in Class 22 to gerrymander votes. He contended that the plan was not proposed in good faith because the financial projections were implausible

---

[3] Meanwhile, on September 13, iE filed a further amended plan and amended disclosure statement. The payments to general unsecured creditors remained the same.

and unrealistic. Finally, he argued that the plan was unfeasible because iE did not provide adequate financial information.

iE argued that Mr. Williams lacked standing to object to confirmation of the plan under § 1109(b) because the court had disallowed the Claim. It contended that it did not misclassify the Claim as Class 23 and pointed out that "23" referred to the claim number associated with the Claim, not a class number. Finally, it argued that the plan was proposed in good faith, feasible, and based on reliable financial information.

After a hearing, the bankruptcy court denied the Motion for Reconsideration and overruled the Confirmation Objection. It stated that the Motion for Reconsideration only rehashed prior arguments, which it had already considered and rejected. As for the Confirmation Objection, the court agreed with iE that Mr. Williams lacked standing to challenge plan confirmation because he did not have an allowed claim. It also held that, regardless, none of his arguments were meritorious.

The bankruptcy court entered an order confirming the plan ("Confirmation Order"), and Mr. Williams timely appealed.

The court also entered an order denying the Motion for Reconsideration ("Reconsideration Order"). Mr. Williams filed a timely notice of appeal from the Reconsideration Order but did not include the Claim Objection Order in his notice of appeal.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B) and (L).

We must consider whether we have jurisdiction over these appeals. iE filed a motion to dismiss, arguing that these appeals are equitably moot.

"We cannot exercise jurisdiction over a moot appeal." *Ellis v. Yu (In re Ellis)*, 523 B.R. 673, 677 (9th Cir. BAP 2014) (citations omitted). An appeal is moot if events have occurred that prevent an appellate court from granting effective relief. *See Ederel Sport, Inc. v. Gotcha Int'l L.P. (In re Gotcha Int'l L.P.)*, 311 B.R. 250, 253-54 (9th Cir. BAP 2004). The "party moving for dismissal on mootness grounds bears a heavy burden." *Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 880 (9th Cir. 2012) (quoting *Jacobus v. Alaska*, 338 F.3d 1095, 1103 (9th Cir. 2003)).

A case may become constitutionally, statutorily, or equitably moot. *Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 33 (9th Cir. BAP 2008). This appeal presents a question of equitable mootness.

"Equitable mootness concerns whether changes to the status quo following the order being appealed make it impractical or inequitable to 'unscramble the eggs.'" *Castaic Partners, II, LLC v. Daca-Castaic, LLC (In re Castaic Partners II, LLC)*, 823 F.3d 966, 968 (9th Cir. 2016) (quoting *In re PW, LLC*, 391 B.R. at 33). Under the equitable mootness doctrine, we may "dismiss appeals of bankruptcy matters when there has been a

'comprehensive change of circumstances . . . so as to render it inequitable for this court to consider the merits of the appeal.'" *Rev Op Grp. v. ML Manager LLC (In re Mortgs. Ltd.)*, 771 F.3d 1211, 1214 (9th Cir. 2014) (quoting *In re Thorpe Insulation Co.*, 677 F.3d at 880). "An appeal is equitably moot if the case presents 'transactions that are so complex or difficult to unwind' that 'debtors, creditors, and third parties are entitled to rely on [the] final bankruptcy court order.'" *Id.* at 1215 (quoting *In re Thorpe Insulation Co.*, 677 F.3d at 880).

We consider four factors in determining whether an appeal is equitably moot:

> (1) "whether a stay was sought, for absent that a party has not fully pursued its rights"; (2) "if a stay was sought and not gained, we then will look to whether substantial consummation of the plan has occurred"; (3) "we will look to the effect that a remedy may have on third parties not before the court"; (4) "[f]inally, we will look at whether the bankruptcy court can fashion effective and equitable relief without completely knocking the props out from under the plan and thereby creating an uncontrollable situation before the bankruptcy court."

*Id.* at 1217 (quoting *In re Thorpe Insulation Co.*, 677 F.3d at 881).

First, Mr. Williams did not seek a stay pending appeal. The Ninth Circuit has stated that "[a] failure to seek a stay can render an appeal equitably moot." *In re Thorpe Insulation Co.*, 677 F.3d at 881 (citation omitted). It has clarified that an appeal is "equitably moot unless [the

appellant] offers 'adequate reason' for its failure to seek a stay." *In re Mortgs. Ltd.*, 771 F.3d at 1216 (citation omitted).

Mr. Williams admits that he did not seek a stay pending appeal but claims that he did not want to stay the case because he does not oppose iE's chapter 11 restructuring. The Ninth Circuit has recognized an exception to the equitable mootness doctrine where an appellant did not seek a stay pending appeal but was only seeking monetary damages from a stable pool of funds. *Id.* at 1216-17 (citing *Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.)*, 314 F.3d 1070, 1074 (9th Cir. 2002)). This type of relief would not "require overturning previous distributions and allocations to third parties not before this court." *Id.* at 1217.

Similarly, Mr. Williams is not requesting that the bankruptcy court undo or unwind past payments to creditors but is seeking to extend the plan term to have the Claim paid after the other unsecured creditors. As we will explain below, Mr. Williams' request is not as limited as he claims. Nevertheless, we conclude that Mr. Williams' failure to seek a stay is not fatal to this appeal.

Second, we consider whether the plan has been substantially consummated. *In re Thorpe Insulation Co.*, 677 F.3d at 882. "Substantial consummation" includes the "commencement of distribution under the plan." § 1101(2)(C).

Mr. Williams concedes that iE has been making distributions under

the confirmed plan. Thus, the plan has been substantially consummated. *See Todeschi v. Juarez (In re Juarez)*, 603 B.R. 610, 620 (9th Cir. BAP 2019). This factor favors equitable mootness.

Third, we must consider whether "the remedy [appellant] seeks 'would bear unduly on the innocent.' That turns on whether it is possible to alter the [orders on appeal] 'in a way that does not affect third party interests to such an extent that the change is inequitable.'" *In re Mortgs. Ltd.*, 771 F.3d at 1218 (quoting *In re Thorpe Insulation Co.*, 677 F.3d at 882).

Mr. Williams asserts that reversal would have minimal effect on third parties because he is only seeking payment after the other unsecured creditors, which, he posits, would require a two-and-a-half year extension of the plan.

His view is too sanguine in at least two respects.

First, his math is wrong. As we explain below, paying the Claim would require increasing the plan term by not just two-and-a-half years but rather about thirty years.

Second, iE is a small business whose survival, let alone success, probably depends on the continued services of its owner, Mr. Jacoby. Mr. Jacoby was apparently willing to devote five years to the repayment of creditors, during which the creditors rather than he would receive a large share of the benefits from his efforts. He may or may not be willing to devote over thirty years to that purpose. If Mr. Jacoby quits, the plan could

11

fail and unsecured creditors could be hurt. But we cannot be sure of what Mr. Jacoby might do, and we also cannot rule out the possibility that iE could propose a different plan that Mr. Jacoby would support. Therefore, we cannot say with certainty whether reversal might unduly prejudice third parties, and this factor is in equipoise.

Fourth, and most importantly, we consider whether it is possible for the bankruptcy court to fashion effective and equitable relief. *Id.* at 1217. We have serious doubts on this score. Because the plan has been substantially consummated, it cannot be modified. § 1127(b) ("The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan . . . ."). Therefore, the bankruptcy court could not simply require iE to pay more than the plan provides. Nevertheless, if we were to reverse the disallowance of the Claim, we would likely have to reverse the confirmation of the plan,[4] and iE could formulate a new and completely different plan. Therefore, although reinstatement of the Claim would literally "knock the props" from under the existing plan, it would not necessarily leave the bankruptcy court with an "uncontrollable

---

[4] Under the absolute priority rule of § 1129(b)(2)(B), a plan cannot be confirmed if a junior class keeps or receives anything under the plan and a senior class of unsecured claims rejects the plan and is not paid in full. If the Claim were allowed, iE's plan would fail this test because Mr. Jacoby retains his equity interest, Mr. Williams would vote to reject the plan, his vote would cause the unsecured class to reject the plan, and there is not enough plan funding to pay all unsecured claims (including Mr. Williams') in full.

situation," because iE could propose a different plan and the court could consider it in the usual fashion.

Although it is a close call, we think it best to address these appeals on the merits. We thus conclude that the appeals are not equitably moot and deny iE's motion to dismiss. We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

(1) Whether the bankruptcy court erred in disallowing the Claim and denying the Motion for Reconsideration.

(2) Whether the bankruptcy court abused its discretion in confirming iE's chapter 11 plan.

## STANDARDS OF REVIEW

"The bankruptcy court's decision on an objection to proof of claim is a mixed question of fact and law. We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo." *Choudhuri v. Deutsche Bank Nat'l Tr. Co. (In re Choudhuri)*, BAP No. NC-14-1140-PaJuKu, 2014 WL 5861374, at *4 (9th Cir. BAP Nov. 12, 2014) (citing *In re Thorpe Insulation Co.*, 677 F.3d at 1030). A factual finding is clearly erroneous if it is illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP

13

2014) (citations omitted).

We review for an abuse of discretion the bankruptcy court's decision to confirm a chapter 11 plan. *Marshall v. Marshall (In re Marshall)*, 721 F.3d 1032, 1045 (9th Cir. 2013). Similarly, we review for an abuse of discretion the bankruptcy court's ruling regarding a motion for reconsideration. *Carruth v. Eutsler (In re Eutsler)*, 585 B.R. 231, 235 (9th Cir. BAP 2017) (citations omitted).

To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262-63 & n.21 (9th Cir. 2009) (en banc).

## DISCUSSION

### A.   The bankruptcy court did not err in disallowing the untimely Claim.

Mr. Williams argues that the bankruptcy court erred in failing to find excusable neglect to allow the late-filed Claim. We discern no error.

14

**1.    We review both the Claim Objection Order and Reconsideration Order.**

As an initial matter, we must determine which order or orders are on appeal. Generally, an appellant must file a notice of appeal that includes a copy of the order appealed from. *See* Rule 8003(a)(3)(B).

Mr. Williams' notice of appeal only referenced the Reconsideration Order and did not attach or reference the Claim Objection Order. Furthermore, the issues on appeal identified in his opening brief only mention the Reconsideration Order.

Mr. Williams admits that he did not technically appeal from the Claim Objection Order but argues that we should review it nonetheless. He says that it was obvious that he meant to appeal from the Claim Objection Order, he fully briefed those issues, and iE addressed his contentions in its answering brief.

Although we disapprove of Mr. Williams' failure to designate the Claim Objection Order for appeal, we will not let his technical failure preclude our review of that order. In arguing for reversal of the Reconsideration Order, Mr. Williams also addressed the merits of the Claim Objection Order, and iE responded to those arguments. *See Munoz v. Small Bus. Admin.*, 644 F.2d 1361, 1364 (9th Cir. 1981) ("[A] mistake in designating the judgment appealed from should not result in loss of the appeal as long as the intent to appeal from a specific judgment can be fairly

15

inferred from the notice and the appellee is not misled by the mistake.").

### 2. Mr. Williams' late filing was not the result of excusable neglect.

The bankruptcy court found that Mr. Williams' late filing of the Claim was not the result of excusable neglect. The bankruptcy court's findings were not clearly erroneous.

Rule 9006(b) affords the bankruptcy court discretion to allow untimely claims if the claimant establishes "inadvertence, mistake, or carelessness" or "intervening circumstances beyond the party's control." *Pioneer Inv. Servs. Co.*, 507 U.S. at 388. The Supreme Court has identified four factors to determine whether excusable neglect should allow the late filing of a proof of claim: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395. "[T]he determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.*

### a. Danger of prejudice to the debtor

Mr. Williams argues that there was no prejudice to iE because it filed the first amended plan and disclosure statement two weeks after he filed the Claim; iE always knew of the Claim; and the Claim would not cause any delay in approval of the disclosure statement and plan. Conversely, iE

argues that it would have suffered prejudice because Mr. Williams had delayed adjudicating the State Court Action; the disclosure statement and plan were ready except for a few minor changes; and it would have been forced to litigate the Claim and amend the plan significantly to address it.

The fact that iE would have to litigate the Claim is not "prejudice." *See Wall St. Plaza, LLC v. JSJF Corp. (In re JSJF Corp.)*, 344 B.R. 94, 102 (9th Cir. BAP 2006), *aff'd and remanded*, 277 F. App'x 718 (9th Cir. 2008) ("[P]rejudice requires more than simply having to litigate the merits of, or to pay, a claim—there must be some legal detriment to the party opposing."). It would be absurd, however, to say that the allowance of the Claim would not have delayed or adversely affected the reorganization process. The Claim was roughly equal to all other unsecured claims combined. Doubling the pool of unsecured claims would have required extensive changes to the plan and disclosure statement. Confirmation of the plan and distribution to other creditors would have been delayed, and the estate would have borne significant additional administrative expenses. This factor demonstrates prejudice to iE and the general unsecured creditors.

>    b.    **Length of the delay and its potential impact on judicial proceedings**

Mr. Williams argues that there was no delay because he filed the Claim before iE filed either of its amended plans and iE could make

payments into escrow pending resolution of the State Court Action. He also argues that iE could subordinate the Claim and add an additional two-and-a-half years to the plan term, which would not affect the other unsecured creditors. In response, iE argues that Mr. Williams did not take any action to deem the Claim timely for eight months after the claims bar date. It argues that liquidation of the Claim would indefinitely delay the case and cause it to incur significant administrative expenses.

We agree with the bankruptcy court that the six-month delay in filing the Claim was "not insignificant." We also agree with iE that it would have taken significant time and expense to recraft a confirmable plan. This likely would have reduced the funds available to general unsecured creditors.

Although Mr. Williams repeatedly insists that iE could simply extend the plan term "to add another 2.5 years to the term, which would result in a five-year plan term[,]" his calculations are blatantly wrong. In the first place, section II.C.c of the plan unambiguously provides for a term of sixty months (five years), not two-and-a-half years. More importantly, the plan provides for payments to non-insiders of $2,989.35 per month for sixty months, for a total of $179,361.10. Payment of the insiders' claims of $410,000 at the same monthly rate would take another 137 months (over eleven years); finally, Mr. Williams' subordinated $600,000 Claim would take another 201 months (nearly seventeen years). In other words, his proposed solution would extend the plan term from sixty months to 398

months, or over thirty-three years. Proving feasibility of a plan with a thirty-three year term would be a massive and uncertain undertaking, the cost and delay of which would have fallen on the estate and its creditors.

Moreover, Mr. Williams cites no authority to support his proposition that a tardy claim may (or must) be subordinated in a chapter 11 case.[5] Section 510(c)(1) provides that a bankruptcy court may, "under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim . . . ." However, "[d]isallowance and subordination are different. 'Disallowance of a claim is a legal determination that the claim under consideration is not allowable by law. On the other hand, subordination of a claim presupposes that the claim is allowed but for equitable reasons must be subordinated to the other allowed claims.'" *Margaret B. McGimsey Tr. v. USA Capital Diversified Tr. Deed Fund, Inc. (In re USA Commercial Mortg. Co.)*, 377 B.R. 608, 617 (9th Cir. BAP 2007) (citation omitted). In other words, for the bankruptcy court to even consider subordination, there must be an allowed

---

[5] Section 726(a)(3) provides that late claims are paid after timely claims in chapter 7 cases, but that section has no analog in chapter 11. *See Wrenn Assocs., Inc. v. Hexaport Int'l Ltd. (In re Wrenn Assocs., Inc.)*, No. 04-11408-JMD, 2005 WL 3369272, at *2 (Bankr. D.N.H. Nov. 29, 2005) ("Nothing in Rule 3002(c)(2) grants the bankruptcy court the power to allow an untimely claim and create distribution rights for such claim outside of a confirmed plan of reorganization. If the Defendant's claim was not timely filed, it may not be subordinated under the provisions of section 726 because that provision of the Bankruptcy Code does not apply to the distribution of property of the bankruptcy estate in a chapter 11 proceeding.").

claim. Here, the court's finding that the Claim was untimely – and thus disallowed – precluded subordination.

Therefore, this factor weighs against excusable neglect.

### c. Reason for the delay

Mr. Williams argues that the delay was caused by Mr. Fernandez's temporary employee's "negligent but innocent" failure to calendar the claims bar date. The bankruptcy court found the excuse not "particularly compelling." We will not disturb the court's judgment.

An attorney's mistake in calendaring deadlines can constitute excusable neglect. For example, in *Pincay v. Andrews*, 389 F.3d 853 (9th Cir. 2004) (en banc), the appellant failed to timely file a notice of appeal because his counsel's paralegal misread the applicable rule and mistakenly calendared the appeal deadline. The Ninth Circuit affirmed the district court's decision that the miscalendaring error was excusable neglect.

On the surface, *Pincay* appears to support Mr. Williams' position that a calendaring mistake constitutes excusable neglect. However, *Pincay* actually stands for the proposition that "per se rules are not consistent with *Pioneer* . . . ." *Id.* at 855. The Ninth Circuit declined to second guess the lower court's findings:

> We recognize that a lawyer's failure to read an applicable rule is one of the least compelling excuses that can be offered; yet the nature of the contextual analysis and the balancing of the factors adopted in *Pioneer* counsel against the creation of

any rigid rule. **Rather, the decision whether to grant or deny an extension of time to file a notice of appeal should be entrusted to the discretion of the district court because the district court is in a better position than we are to evaluate factors** such as whether the lawyer had otherwise been diligent, the propensity of the other side to capitalize on petty mistakes, the quality of representation of the lawyers (in this litigation over its 15-year history), and the likelihood of injustice if the appeal was not allowed. **Had the district court declined to permit the filing of the notice, we would be hard pressed to find any rationale requiring us to reverse.**

*Id.* at 859 (emphases added).[6]

Therefore, we defer to the bankruptcy court's finding that the calendaring error was not excusable neglect.

### d. Good faith

Mr. Williams argues that there was no evidence of bad faith conduct. iE contends that the lack of bad faith does not translate into good faith.

The bankruptcy court did not find a lack of good faith. We defer to the bankruptcy court's findings.

The bankruptcy court determined that, on balance, the four factors weighed against a finding of excusable neglect. This was far from an abuse

---

[6] This case is not like *ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.)*, 450 F.3d 996 (9th Cir. 2006), where the Ninth Circuit held that the bankruptcy court abused its discretion in declining to find excusable neglect for failure to file a timely notice of appeal. The court held the neglect excusable because the appellants were unrepresented by counsel and had received notices that "were, at the very least, ambiguous, and more likely affirmatively misleading." *Id*. at 1006. Neither of these circumstances are present here.

of discretion.

### 3. Mr. Williams did not offer any viable reason for the court to reconsider the Claim Objection Order.

As the bankruptcy court aptly noted, the Motion for Reconsideration rehashed Mr. Williams' earlier arguments. Denying that motion was not an abuse of discretion.

Mr. Williams relied on Civil Rule 60, made applicable in bankruptcy by Rule 9024, but because he filed the Motion for Reconsideration within the fourteen-day period after the entry of the Claim Objection Order, we examine his arguments under Civil Rule 59, made applicable in bankruptcy by Rule 9023. *See Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 898-99 (9th Cir. 2001) ("A 'motion for reconsideration' is treated as a motion to alter or amend judgment under [Civil Rule] 59(e) if it is filed within [fourteen] days of entry of judgment. Otherwise, it is treated as a [Civil] Rule 60(b) motion for relief from a judgment or order." (citation omitted)). The Ninth Circuit has stated that, "[u]nder [Civil] Rule 59(e), a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) (citation omitted).

The Motion for Reconsideration did not raise any newly discovered

evidence, establish clear error, or identify an intervening change in law. The only new argument was Mr. Williams' alternative request for relief: that the court subordinate the Claim to the other unsecured claims.

However, as we discussed above, subordination would not be as neat and tidy as Mr. Williams suggests. It would result in possibly extending the plan term from five years to thirty-three years. This would severely impact the plan and could adversely affect unsecured creditors. The bankruptcy court did not err in denying the Motion for Reconsideration.

**B.    The bankruptcy court did not abuse its discretion in confirming iE's chapter 11 plan.**

In the second appeal, Mr. Williams argues that the bankruptcy court erred in confirming the plan. We again discern no error.

Mr. Williams argues for the first time that the plan should have either included the Claim with the other general unsecured claims or separately classified the Claim, in which case he would have voted against the plan and required iE to satisfy the absolute priority rule.

"As a general rule, we will not consider arguments that are raised for the first time on appeal." *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999). But even if we consider this argument, Mr. Williams concedes that, if we affirm the bankruptcy court's decision to disallow the Claim, the appeal from the Confirmation Order must also fail. As we discussed above, the bankruptcy court did not err in disallowing the Claim. Accordingly, the

Claim was not entitled to any treatment under the plan.

Further, even if we consider the bases of his Confirmation Objection raised in the bankruptcy court, they are meritless. He argued that iE had improperly classified the Claim as Class 23. But Mr. Williams misread the plan and apparently confused the Claim number with the class number.

Mr. Williams also argued that the plan was not proposed in good faith and was not feasible. But he now argues that iE can easily extend it for decades to provide treatment for the Claim; he cannot have it both ways. In any event, we defer to the bankruptcy court's finding that the plan was feasible.

Accordingly, the bankruptcy court did not abuse its discretion in confirming the plan.

## CONCLUSION

The bankruptcy court did not err in disallowing the Claim or confirming iE's chapter 11 plan. We AFFIRM.